Francisca Sosa Fernández, demandante y apelante, v. José Sosa Oliva, demandado y apelado.

No. 4914.—*Sometido:* Febrero 18, 1930. *Resuelto:* Noviembre 27, 1931

*Juan B. Soto,* abogado de la apelante; *J. H. Brown, C. Ruiz Nazario, Blondet & Campillo* y *G. E. González,* abogados del apelado.

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

Ramona Fernández Betancourt falleció en Río Grande el 3 de marzo de 1907. Estaba casada con José Sosa Oliva, el aquí demandado. El título del pleito es "reclamación y entrega de bienes hereditarios". Tal vez no puede darse mejor interpretación a estas palabras que diciendo que significan un pleito sobre rendición de cuentas y partición de herencia. La demanda alega la posesión por el demandado de varios predios de terreno, algunos de ellos adquiridos inmediatamente después de la muerte de Ramona Fernández Betancourt y otros durante años posteriores. Las súplicas de la demanda son, asumiendo que esas propiedades pertenecen a la sociedad conyugal existente entre Ramona Fernández Betancourt y José Sosa Oliva, que se declare que la herencia materna de Francisca Sosa Fernández, la hija demandante en este caso, está incluída en esas propiedades, que éstas le sean entregadas al administrador judicial para su partición, y que las varias inscripciones en el registro a favor de José Sosa Oliva sean canceladas.

■ Fué el caso a juicio y la Corte de Distrito de San Juan dictó sentencia a favor del demandado José Sosa Oliva. En apelación, el demandado impugna la demanda, o tal vez más particularmente la teoría del pleito según fué juzgado. Sostiene que no hay tal acción en Puerto Rico como la declaración de un "resulting trust", que aparentemente, alega él, es la teoría del pleito presente. Ahora bien, aunque el demandado puede tener razón al decir que ninguno de los remedios específicamente pedidos por la demandante en sus súplicas podía obtenerse en este pleito, uno no podría leer el título y seguir los procedimientos en el juicio, incluyendo la opinión del juez, sin convencerse de que lo que la demandante trataba de obtener de su padre era en realidad de verdad una rendición de cuentas, y que las partes así consideraron el pleito. Hasta ahora no vemos motivo alguno por el cual era necesario hacer parte al administrador judicial, y el demandado no presentó objeción al defecto de partes. Quizá para que los bienes fueran entregados al administrador judicial él debió haber sido incluído como parte. Sin embargo, tanto el padre como la hija están ante la corte y este tribunal puede resolver si José Sosa Oliva debe algo a su hija por concepto de su herencia materna, si tal herencia emana de los bienes privativos de Ramona Fernández Betancourt, o si formaba parte de los bienes gananciales a ser repartidos a su fallecimiento entre su esposo y sus dos hijos, es decir, la mitad para el viudo y una cuarta parte para cada uno de los hijos supérstites.

■■ ■■ Se admite que el padre de Ramona Fernández Betancourt dejó $9,980.98 a su hija. El demandado sostiene que de esta cantidad la mercantil Fernández & Sobrino, que adeudaba el dinero, rebajó $5,520.96 por haber Ramona Fernández recibido previamente esa suma. La teoría del demandado es que Ramona Fernández sólo recibió dichos $5,520.96 y entonces los usó para sus propios fines. No estamos satisfechos con esta explicación. Al tiempo de la supuesta entrega de esa suma, Ramona Fernández Betancourt

estaba casada con José Sosa Oliva. El demandado no ha hecho tentativa alguna de explicar cómo y cuándo y dónde desapareció la susodicha cantidad. Hay una presunción lógica de que el dinero fué a manos del marido para su uso propio y el de su familia, y en ausencia de una explicación mejor, nos debemos sentir obligados a resolver que la totalidad de la suma de $9,980.98 quedó bajo el control del referido esposo y administrador. En forma similar, no estamos satisfechos con la explicación de la desaparición de los $4,470.02 restantes. La presunción debe ser que cualquier dinero que la esposa gastó fué pagado de los bienes gananciales, y esto es cierto en lo que se refiere a los $5,520.98 o a los $4,470.02. Es necesario que el marido que tiene en su poder fondos pertenecientes a su mujer explique la desaparición de aquéllos. La corte inferior aparentemente creyó lo que dijo José Sosa Oliva, y puede haber sostenido la teoría de que el dinero se pagó para usos privados de la esposa y debe provenir de sus bienes privativos, pero ésa no es la teoría de la ley.

Llegamos ahora a los bienes gananciales. Durante el juicio, el caso giró grandemente sobre supuestas admisiones hechas por José Sosa Oliva en dos testamentos que hizo. Un testamento otorgado en 1907 fijó en $25,136 el valor de los bienes en poder de José Sosa Oliva. Ese testamento también demostraba que José Sosa Oliva se cargó en aquel entonces los $9,980.98 (el testamento dice $9,300) recibidos por su esposa del padre. Esto dejaría como bienes gananciales entre quince mil y dieciseis mil dólares.

El demandado presentó en el juicio un recibo del Tesorero de Puerto Rico que por sí mismo demostraba que los bienes gananciales ascendían a $13,318. Discutiremos más tarde el hecho de que el demandado y la corte inferior sostuvieron que la cantidad a ser distribuída era alrededor de la mitad de los $13,318. Se admite por el demandado, y la corte así lo resolvió, que a los bienes gananciales, cualesquiera que fuesen, debe agregarse la cantidad de $2,000. De suerte que

si esa cantidad se añade a la de $13,318, los bienes gananciales serían de quince mil a dieciseis mil dólares, que es más o menos la cantidad total que admitió o se cargó José Sosa Oliva en el testamento hecho en 1907.

La corte inferior declaró que la cantidad a distribuir, según demostraba el recibo de tesorería, era $6,498, y que debían agregarse a esa suma $2,000. Ese fué un error claro de la corte. Esta y el demandado trataron de explicar un error en la entrega de la porción hereditaria perteneciente al hijo de José Sosa Oliva, expresando que como resultado de un error de calculación el hijo recibió el doble de lo que debió haber percibido, a causa de una equivocación cometida por el abogado Herminio Díaz Navarro. Empero, no se explica satisfactoriamente cómo surgió el error, y el recibo de tesorería, si se examina con el debido cuidado, revela la suma de $13,318. Es totalmente increíble que ya José Sosa Oliva o el abogado Herminio Díaz Navarro rindieran un informe de bienes gananciales que excedía en mucho el valor de los que marido y mujer poseían. Nos parece que el juez de la corte inferior y el demandado examinaron este recibo de tesorería muy descuidadamente y consideraron la cantidad de $6,498 como el valor total de los bienes, cuando era la cantidad exacta sobre la que se impusieron contribuciones. En otras palabras, había que pagar derechos de herencia por la porción hereditaria de los dos hijos. No había que pagarlos por la parte perteneciente a José Sosa Oliva, toda vez que él no estaba heredando esa porción de su esposa.

En el testamento hecho en 1907 el demandado también dijo que al casarse (sin expresar la fecha) no tenía bienes propios. En el juicio, sin embargo, declaró que al tiempo de su matrimonio celebrado muchos años antes, poseía alrededor de cinco mil dólares. De acuerdo con sus propias manifestaciones, esos bienes consistían de ganado y una siembra en terrenos pertenecientes a la Central Canóvanas. No estamos convencidos por las manifestaciones que hallamos en el récord de que los bienes que poseía para aquella época o su partici-

pación en la siembra pudieran ascender a cinco mil dólares, o de que él claramente tuviera esa cantidad, o una menor, en sus manos después de rebajar lo necesario para su subsistencia. Es algo excesivamente indefinido. Al interrogársele por qué expresó en su testamento que no tenía bienes al contraer matrimonio, dijo que lo hizo para proteger a sus pequeños hijos contra las reclamaciones de hijos naturales, porque estaba muy ansioso de que su progenie legítima recibiera sin molestias la herencia. Lo dicho en el testamento es la evidencia más fuerte, y así lo declaramos.

■ En adición al testamento hecho en 1907 el demandado otorgó otro en 1912. Este testamento fué presentado en evidencia en forma mutilada. Había una página o más que aparentemente consignaba los bienes pertenecientes a José Sosa Oliva. Esa página faltaba, por haber sido arrancada de su matriz. No podemos imputarle a nadie la culpa de esta mutilación, pero creemos que surgió un deber en el demandado—suponiendo que el alegado testamento fuera admisible como prueba—de explicar, o suplir con sus libros, los datos faltantes. El testamento de 1907 demuestra que el demandado en verdad llevaba libros y que hizo su declaración de bienes en 1907 de tales libros. El debió estar en condiciones de explicar con sus libros de 1912 lo que éstos demostraban. Haber dejado de hacer esto era, o una supresión de evidencia, o algo muy similar, y milita contra el demandado.

■ Ferdinand R. Cestero fué llamado como testigo del demandante. El había sido testigo en el testamento de 1912, y prestó testimonio tendente a demostrar que José Sosa Oliva hizo constar que poseía una gran cantidad perteneciente a sus hijos. La corte no dió crédito a la declaración de Cestero, al parecer no porque dudara de la integridad del testigo, sino porque la memoria de éste, de acuerdo con la corte, se mostró enteramente defectuosa. El testigo no recordaba dónde estaba situada la oficina del notario, ni algunos de los que estaban presentes, y se equivocó al decir que el documento fué escrito a máquina cuando en realidad lo fué a mano. No

creemos que estos errores en la declaración de un testigo prestada en 1927 deban servirle de tacha cuando se refería a hechos que ocurrieron en 1912. Fueron equivocaciones respecto a detalles de menor importancia que cualquiera podría haber cometido naturalmente sin errar en cuanto al hecho principal. En otras palabras, nos inclinamos a creer que la corte no debió negarse enteramente a considerar la declaración de Cestero por las razones que apuntó.

Admitiendo que el demandado adeudara cierta cantidad a su hija en concepto de herencia materna, el demandado mantuvo, y la corte resolvió, que el referido demandado tenía derecho a rebajar de la cuenta unos $2,000, que sostuvo pagó a su hija después de haber llegado a la mayoridad, de su herencia materna. Si se examinan los autos nada se verá que demuestre, fuera de su propia manifestación indefinida, que el padre pagara esta suma a su hija a cargo de su herencia materna. Ordinariamente, cuando una hija ha estado viviendo con su padre y llega a ser mayor de edad, su padre continúa sufragando los gastos de ella, si tiene dinero para ello. Generalmente, ningún padre rebajará la cantidades que pasa a una hija de su herencia materna. No hay presunción de que el dinero así pagado se tomara de la herencia de la hija. Sólo encontramos el pago real de esa suma.

Llegamos a la conclusión de que a José Sosa Oliva se le debió cargar la herencia que Ramona Fernández Betancourt recibió de su padre. La cantidad de bienes gananciales demostrada por el recibo de contribuciones, que probablemente no fué exagerado, era $13,318. Según resolvió la corte, deben agregarse $2,000, haciendo un total de $15,318. De esa cantidad deben rebajarse $1,755.16 que, según declaró la corte, se gastaron en los funerales de Ramona Fernández Betancourt. De suerte que la cantidad total a repartir era $13,562.84. La mitad, o sea, $6,781.42, pertenecía a los hijos. Por tanto, $3,390.71 correspondían a la hija. Si se añade la mitad de la herencia de la madre, ascendente a $4,990.49, la participación adeudada a la hija sería $8,381.20. De esta

suma no estamos convencidos de que deba descontarse parte alguna del dinero que suministró el padre a la hija después de ella llegar a su mayoridad.

 Los testamentos de que se trata eran declaraciones en perjuicio propio y aparentemente admisibles en evidencia. Por lo menos, en la corte inferior no se formuló objeción alguna por este motivo específico.

La demanda en este caso alegaba bienes gananciales por valor de $50,000, pero no hallamos en la prueba datos suficientes para ir más allá de la ¹aludida cantidad de $8,381.20. Es muy posible que el demandado utilizara desde el 1907 los bienes gananciales y aumentara los que poseía mediante el uso de los gananciales o más bien de la mitad perteneciente a los menores. Pero en los autos falta una total demostración de esto. También hemos considerado la posibilidad del pago de intereses sobre los dichos $8,381.20, mas no los impondremos en razón a los varios pagos que el demandado hizo a su hija.

Por virtud de todo lo expuesto *debe revocarse la sentencia apelada y dictarse otra condenando al demandado a pagar a su hija la demandante como herencia materna la suma de $8,381.20, con intereses legales a partir de esta fecha y las costas.*