María C. Ruiz de Torres, Etc., recurrente, *v.* Comisión Industrial de Puerto Rico, Etc., demandada, y El Administrador del Fondo del Seguro del Estado, asegurador del patrono Plata Sugar Company.

Núm. 237.—*Sometido:* Marzo 16, 1942. *Resuelto:* Abril 10, 1942.

*Walter Rivera Díaz* e *Hipólito Marcano,* abogados de la recurrente; *Hon. Procurador General George A. Malcolm* y *G. Atiles Moréu,* Asesor legal éste del Fondo del Seguro del Estado, abogados del Administrador del Fondo mencionado.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

Antonio Torres Jiménez, mayordomo de la Plata Sugar Co. falleció el 14 de octubre de 1937, según certificó el Dr. Néstor Cardona, de "septicemia, *pyemia,* erisipela, empiema costado izquierdo, ictericia, hemoglobinuria." Su viuda, María C. Ruiz de Torres, alegando que la erisipela que tuvo su esposo fué causada por un accidente del trabajo sufrido al cortarse la oreja derecha con una hoja de caña mientras hacía un recorrido a caballo, el día 7 del mismo mes, por una colonia de su patrono, reclamó la compensación correspondiente ante el Administrador del Fondo del Seguro del Estado. Esta reclamación fué denegada por el administrador por el fundamento de que "a base de la investigación practicada en el caso se desprende que con anterioridad a la fecha de su alegado accidente, ya Torres ofrecía todos los síntomas de la enfermedad que le causó la muerte."

Apelado el caso a la Comisión Industrial y celebrada la vista correspondiente en la que las partes presentaron su prueba, la comisión confirmó la decisión del administrador, dictando una extensa y elaborada resolución que cubre veinticinco páginas, en la que analizó cuidadosamente las declaraciones de todos los testigos y especialmente las de los doctores M. Rodríguez Cancio, Antonio Muñiz, Néstor de Cardona, Pedro A. Perea y Ramón Piñeiro Fernández.

Después de dicho análisis la Comisión Industrial hizo constar en su resolución lo siguiente:

"La Comisión Industrial entiende que, de acuerdo con la prueba practicada ante ella, el obrero Antonio Torres Jiménez ya venía padeciendo de su oreja derecha desde el día 4 de octubre, o sea, tres días antes del alegado accidente, y que si éste ocurrió, la muerte del

obrero no se debió al mismo, sino que fué consecuencia de la infección de que venía padeciendo.''

La peticionaria María C. Ruiz de Torres solicita revisemos la resolución de la Comisión Industrial y expedimos el auto por aparecer que los errores imputados a dicho organismo se refieren, principalmente, a la apreciación que de la prueba pericial hizo al resolver la apelación, siendo éste el único caso en que este tribunal puede entrar a considerar la prueba presentada, de acuerdo con el artículo 11 de la ley 45 de 18 de abril de 1935 ((1) pág. 251) tal y como quedó enmendado por la ley 121 de 2 de mayo de 1940 (pág. 731).

Antes de proceder a considerar los errores señalados por la peticionaria, parece conveniente citar, con alguna extensión, los fundamentos que hizo constar la recurrida en su resolución para llegar a la conclusión de que el obrero en este caso venía padeciendo de la enfermedad que le causó la muerte desde varios días antes de ocurrir el alegado accidente. Se expresó así:

''¿Y cuáles son los puntos en controversia que tenemos que resolver en este caso? Son dos: primero, si ocurrió o no un accidente del trabajo; segundo, en el supuesto de que un accidente hubiese ocurrido, si éste tuvo relación de causa y efecto con la muerte del obrero.

''Se alega por la peticionaria que mientras el obrero fallecido hacía un recorrido en la Colonia Méndez de la Plata Sugar Co. el día 7 de octubre de 1937, junto con los Sres. Salvador Quiñones y Humberto Olivencia, se hizo un rasguño en la oreja derecha con una hoja de caña, como a las 10 de la mañana, y que a las 11½ de la mañana de ese mismo día, esto es, 1½ horas después, ya Antonio Torres Jiménez se sentía muy mal, con la oreja inflamada y en estado febril, que hizo necesario que su esposa, la peticionaria en este caso, se trasladara del Bo. Plata al pueblo de San Sebastián para ver al Dr. Muñiz y pedirle una receta; pero cabe preguntar: ¿con anterioridad al 7 de octubre de 1937, estaba el obrero Antonio Torres Jiménez padeciendo de alguna infección en su oreja derecha? Veamos lo que declaró el Dr. Muñiz en el interrogatorio a que, bajo juramento le sometiera el Investigador del Fondo del Estado, Sr. Jenaro Cortés Hernández, página 21, *Exhibit* 3 del asegurador. Sería bueno

anotar que el informe de esa investigación fué sometido en evidencia por el Administrador del Fondo del Seguro del Estado y admitido sin la oposición de la parte que representaba a la peticionaria. Se le preguntó al Dr. Muñiz si cuando él fué a ver al obrero por primera vez le preguntó qué tiempo hacía que venía sufriendo de la infección que presentaba en la oreja derecha, a lo que replicó que efectivamente le hizo la pregunta y le dijo que el martes por la noche se había acostado porque se sentía malo; que el miércoles no se había levantado y la oreja ya estaba inflamada. También el Dr. Cardona declaró que durante la consulta médica, la esposa del obrero admitió que el paciente venía enfermo desde el día 4 de octubre. Pág. 21 récord taquigráfico, y página 27 del Exhibit 3 del asegurador. En cuanto a este extremo el Dr. Perea declaró que cuando subió al cuarto del enfermo, lo vió, lo examinó y que de primera intención le pareció un caso muy grave y que indicó al paciente que para poder formar juicio exacto de su padecimiento tenía que explicarle cómo le ocurrió el accidente, y que Antonio Torres Jiménez entonces manifestó que el día 4 de octubre, según el testigo anotó en su libreta, él, el obrero, sintió un dolor en la oreja un picor y que se había rascado la oreja; que el día 6 se había sentido muy malo y llamó al Dr. Muñiz, que siguió malo y entonces el día 9 se trasladó a la Clínica del Dr. Cardona. Pág. 108 récord taquigráfico. Todos los médicos que declararon en la vista pública, tanto del asegurador como de la peticionaria, estuvieron contestes en que el período de incubación de la erisipela fluctúa entre 3 y 7 días. El propio Sr. Muñiz, al preguntársele por la comisión si él creía que el cuadro que presentaba el obrero a las 11½ de la mañana del día 7 de octubre, en que se alega se lesionó, podía ser el resultado del pequeño rasguño que se decía había sufrido el obrero hora y media antes, contestó que él no creía que el período de incubación de esa enfermedad (refiriéndose a la erisipela) sea tan corto. Siendo ello así, que el período de incubación de la erisipela es de 3 a 7 días, ¿cómo es posible que al día siguiente del alegado accidente, a las 9½ de la mañana, el Dr. Muñiz pudiera advertir una erisipela ya desarrollada? Porque según declaró el referido doctor, cuando vió la oreja encontró, según la descripción que hace en la página 63 del récord taquigráfico, había un área roja con los bordes bastante elevados e irregulares, la línea de demarcación del área enferma y la normal bien definida, es decir, la enfermedad en pleno período de invasión. A nuestro juicio, la conclusión más lógica la cual está sostenida por la prueba, es que la enfermedad empezó a manifestarse el día 4 de octubre."

██ Como primer error se alega que la Comisión Industrial dejó de resolver, de una manera categórica, si efectivamente ocurrió o no un accidente del trabajo en este caso. Esto es cierto, pero habiendo resuelto la comisión que la muerte del obrero no se debió al alegado accidente, aun cuando hubiera ocurrido, carece de méritos el señalamiento. Ninguna finalidad práctica hubiera tenido tal declaración si, como sostuvo la recurrida, la única causa de la muerte del obrero fué independiente y anterior al accidente. En relación con este señalamiento podemos resolver el tercero, por el que sostiene la peticionaria que aun cuando se asumiera que la lesión que sufrió el obrero en su oreja derecha no fué la causa directa de su muerte, afectó su condición física de tal manera que le ocasionó la muerte.

A primera vista parecería tener razón la peticionaria, a no ser por el hecho de que es ante esta Corte Suprema que por primera vez plantea esta cuestión. Ni ante el Administrador del Fondo, ni ante la Comisión Industrial suscitó esta teoría, ni trató de probar la misma. A ninguno de los peritos médicos—y fueron cinco los que declararon ante la recurrida—se les hizo una sola pregunta en cuanto a si la pequeña herida que el 7 de octubre recibió el obrero en la oreja pudo en alguna forma agravar la enfermedad que según ellos ya tenía. Todos los médicos convinieron en que el período de incubación de la erisipela tuvo que iniciarse por lo menos tres días antes, o sea el 4 de octubre. La contención de la peticionaria, en todo momento desde que inició su reclamación, fué que el accidente, o sea la cortadura en la oreja producida por la hoja de caña, tuvo como consecuencia inmediata la erisipela y demás complicaciones que le ocasionaron la muerte al obrero.

██ La regla general en estos casos es que compete al reclamante probar que el accidente fué la causa próxima de la muerte, especialmente cuando se demuestra que el obrero sufría de una incapacidad, enfermedad o debilidad con an-

terioridad al accidente. 71 C. J. 1069. Y véanse los casos de *In re Madden,* 111 N. E. 379; *Herlihy's Case,* 166 N. E. 556; y *Gee's Case,* 186 N. E. 83.

■ La peticionaria, al declarar ante la comisión, en todo momento negó que su esposo sufriera de padecimiento alguno antes del día 7 de octubre, en que, a la hora y media de haberse cortado la oreja, se acostó con fiebre. ¿Cómo puede ahora sostenerse, como pretende la peticionaria, que la recurrida erró al no resolver que la herida agravó una enfermedad que la propia peticionaria negó que existiera? Se desestima el tercer error.

■ Por el segundo, alega la peticionaria: " . . . contrario a las normas y principios sobre apreciación de evidencia, la Hon. Comisión Industrial llegó a una conclusión errónea que no está sostenida ni concluyente ni preponderantemente por la prueba pericial y *de otra índole presentada* en la vista, . . . "

En cuanto a la prueba de otra índole que la pericial, no estamos autorizados por la ley para entrar a considerarla, función ésta que compete exclusivamente a la Comisión Industrial; art. 11, ley 45 de 1935, supra; *Amenguar* v. *Comisión,* 49 D.P.R. 10; siendo únicamente cuando se alega que no se presentó prueba alguna en que la comisión pudiera basar su fallo, que esta Corte puede revisar el mismo por dicho motivo. *Cardona* v. *Comisión Industrial,* 56 D.P.R. 847.

■ Ahora bien, tanto en este señalamiento como en el cuarto y el quinto, impugna la peticionaria (1) la apreciación de la prueba pericial, y (2) la admisión de parte de las declaraciones de los doctores Cardona, Piñeiro y Perea como prueba de referencia.

Hemos leído cuidadosamente el extenso récord de la transcripción de evidencia y somos de opinión de que la Comisión Industrial no erró al resolver que la prueba pericial demostró que el período de incubación de la erisipela es de tres a siete días, pues así lo declararon todos los médicos, y que a

lo sumo el término mínimo podía ser el de dos días, según declaró el Dr. Perea, y que habiéndose probado que el obrero presentaba todos los síntomas y características de dicha enfermedad menos de veinticuatro horas después de haber recibido la herida en su oreja, ésta no pudo ser la causa de dicha enfermedad. Tampoco erró la comisión al admitir y dar crédito a las declaraciones de los doctores Cardona y Perea al efecto de que tanto la peticionaria como su esposo les informaron que él venía enfermo desde el 4 de octubre, o sea tres días antes del alegado accidente. Estas declaraciones constituían admisiones hechas, tanto por la peticionaria como por el obrero inmediatamente después de ocurrir el alegado accidente y durante su corta enfermedad y formaban parte de la transacción en controversia, *res gestae,* y como consecuencia eran admisibles para contradecir la declaración posterior de la peticionaria al efecto de que su esposo se enfermó el día 7 de octubre. Los hechos de este caso lo distinguen perfectamente de los del de *Tomás* v. *Comisión Industrial,* resuelto por este Tribunal el 4 de febrero de 1942 (59 D.P.R. 860) en el que se resolvió que la declaración atribuída al obrero *antes* de ocurrir el accidente era de referencia e inadmisible. [7] Pero es más, asumiendo que dichas declaraciones fueran de referencia, del récord aparece que el abogado de la peticionaria no hizo objeción alguna ante la Comisión Industrial a su admisión, y por tanto sería aplicable la regla citada por esta Corte en el caso de *Fajardo et al.* v. *Tió,* 17 D.P.R. 244, de que: ''las declaraciones de referencia tienen fuerza probatoria en los casos en que no se hubiere hecho objeción contra su admisión y no se hubiere impugnado la veracidad de los testigos, ni fueren tales declaraciones esencialmente increíbles o improbables.'' Al mismo efecto, véase la monografía en 104 A.L.R. 1130.

El último error señalado es de carácter genérico y se refiere de nuevo al conflicto de la prueba y a que la preponderancia de la misma favorecía la teoría de la peticionaria en

su reclamación. Con lo anteriormente expuesto basta para concluir que, en cuanto el mismo se refiere a la prueba pericial, carece de méritos.

*Debe desestimarse la petición y confirmarse la resolución recurrida.*

El Juez Asociado Sr. Travieso no intervino.