MARIANA ACOSTA, demandante, apelada y apelante, *v.* BIENVENIDO CRESPO y M. MOCOROA ARSUAGA, INC., demandados, apelantes y apelados. VICTORIA ARROYO ROBLES, por su propio derecho y en representación de CARMEN GLORIA RODRÍGUEZ ARROYO, demandante, apelada y apelante, *v.* Los MISMOS, demandados, apelantes y apelados. GLORIA QUIÑONES, demandante, apelada y apelante, *v.* Los MISMOS, demandados, apelantes y apelados.

Núm. 9957.—*Sometido:* Junio 1, 1949. *Resuelto:* Julio 8, 1949.

240

242

*Wilson P. Colberg*, abogado de los demandados, apelantes apelados;
*Bolívar Pagán*, abogado de las demandantes, apeladas apelantes.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

Los demandados apelan de tres sentencias dictadas a favor de las demandantes en pleitos de daños y perjuicios. Los casos surgieron del mismo accidente y se vieron conjuntamente. Se consolidaron los recursos de apelación y éstos serán resueltos con una sola opinión.

Efraín Rodríguez Quiñones, Adolfo Quiñones y Pedro Luis Rodríguez Acosta murieron mientras viajaban en un vehículo público, tablilla P-1825, manejado por Félix Pagán Molina, chófer empleado por Bienvenido Crespo Torres. Los herederos de los finados radicaron tres pleitos separados de daños y perjuicios contra Crespo y la Hartford Accident and Indemnity Company, comprendiendo sustancialmente las mismas alegaciones. Se alegaba en las demandas y las contestaciones lo admitieron que los tres finados iban con Pagán en el vehículo público, perteneciente a Crespo; que Pagán era empleado de Crespo en calidad de chófer; y que el vehículo chocó contra un árbol, destrozándose y causando la muerte de los finados. Sin embargo, las contestaciones nega-

ron la alegación de que los finados viajaban en la guagua en calidad de pasajeros mediante paga.

Las demandas alegaban también en el cuarto párrafo que el accidente "fué debido a que el referido chófer conducía la mencionada guagua a una velocidad exagerada en exceso de 60 millas por hora, yendo dicho chófer en estado de embriaguez alcohólica, y el cual chófer tomó allí y entonces una curva de la carretera sin reducir la indicada velocidad, y maniobrando con dicha guagua de manera descuidada y con imprudencia temeraria, de manera que el referido chófer perdió el control del vehículo, yendo a chocar dicho vehículo con un árbol situado en la orilla izquierda de la indicada carretera."

Las contestaciones admitieron los hechos alegados en el cuarto párrafo. Y como defensas especiales, los demandados alegaron (1) que los finados incurrieron en negligencia contribuyente, y (2) que ellos y el chófer se dedicaban a una empresa o aventura común, siendo la negligencia del chófer imputable a ellos.

La compañía de seguros presentó como defensas particulares y especiales las alegaciones de que la póliza no responde por el accidente porque (1) ésta tenía cubierta solamente cuando la guagua pública se usara en la transportación de pasajeros mediante paga y porque (2) tenía una cláusula al efecto de que no respondía por accidentes que ocurriesen cuando el chófer la condujese en estado de embriaguez alcohólica.

Las demandantes radicaron demandas enmendadas. La única enmienda fué la eliminación de la frase "yendo dicho chófer en estado de embriaguez alcohólica" del párrafo cuarto de las demandas. Entonces los demandados radicaron sendas mociones solicitando que sus contestaciones a las demandas originales fueran consideradas aplicables a las demandas enmendadas.

Antes de discutir los errores señalados, haremos una síntesis de la prueba. Gonzalo López Pérez, primer testigo de las demandantes, declaró que tenía negocio ambulante y que había vivido toda su vida en Lares; que en la tarde del 22 de octubre de 1946 se encontraba en el kilómetro 31 de la carretera núm. 8, de Lares a San Sebastián, cuando entró a una casa a vender prendas; que en la casa estaba Cándido Rosa; que ambos salieron a la carretera y empezaron a caminar hacia Lares; que vió una guagua pisa y corre que corría de San Sebastián a Lares, manejada por Pagán, y que le ordenó que se detuviese; que cuando le preguntó a Pagán hacia dónde se dirigía, éste le contestó que iba hacia Lares; *que le preguntó a Pagán cuánto cobraba, y que él contestó, cinco centavos, lo mismo que pagaron estos tres que van aquí;* que le dió cinco centavos por cada uno y se montaron en la guagua en el kilómetro 31; que Pedro Luis Rodríguez Acosta, Efraín Rodríguez Quiñones y Adolfo Quiñones, a quienes había conocido toda su vida, estaban en la guagua con el chófer cuando el testigo se montó; que estuvo un rato en la guagua y no notó que hubiera fiesta; que todos actuaban normalmente; que notó que el chófer iba bastante ligero, y que le dijo al chófer que no tenía prisa y que redujera la velocidad; que Pagán le contestó que tenían prisa y que si no le gustaba que se desmontara; que él y Rosa se desmontaron porque sus vidas estaban en peligro y continuaron a pie; que hacía como veinte minutos que iban caminando cuando llegaron al sitio donde la guagua había chocado con un árbol en el kilómetro 33 ó 34.

Declaró en el contrainterrogatorio que siempre ha pagado los cinco centavos al abordar un automóvil; que en los que vienen para Arecibo y Aguadilla uno paga cuando se desmonta, y en los de Camuy al entrar; que no reclamó sus cinco centavos cuando se desmontó porque no quería tener una discusión por cinco centavos; que él fué el único que protestó de la mucha velocidad del vehículo; que no podía

viajar a tal velocidad porque padece de la cabeza y del corazón.

Cándido Rosa, quien declaró que había vivido en Lares cuatro años y medio, corroboró el testimonio de López. El resto de la prueba ofrecida por las demandantes se refería a la cuantía de los daños.

El primer testigo de los demandados fué Francisco Silvestrini, quien declaró que es dueño de un cafetín en Lares, y que entre las 8:30 y 9 a.m. Pagán y sus acompañantes, con excepción de Pedro Luis Rodríguez, se bebieron seis cervezas grandes en su establecimiento; que regresaron como a las cinco de la tarde con Pedro Luis Rodríguez y cada uno se dió un palo de ron; notó que ''no estaban normales, un poquito alegres, metidos como en fiesta. Tampoco estaban borrachos, cayéndose.''

Jorge Cuevas Ríos declaró que es dueño de un restaurante en Lares; que a las 12:30 p.m. estos cuatro, excepto Pedro Luis Rodríguez, estuvieron en su establecimiento a comer; que notó que habían bebido y estaban un tanto alegres, pero no borrachos; que después que comieron, los tres se fueron en una pisa y corre con Pagán manejando.

Elihú Quiñones González declaró que era primo hermano de Efraín Rodríguez Quiñones; que vió a los cuatro, montados en la guagua de Pagán a la 1:30 de la tarde del día del accidente, en la carretera de Piletas; que eran los únicos pasajeros de la guagua; que su primo lo llamó y lo invitó a ''fiestar'' con ellos; que al negarse, el chófer le dijo que no era un macho y se fueron; que vió cuatro botellas de cerveza en el piso de la guagua y una que llevaba su primo; que los cuatro estaban alegres y metidos en fiesta; que no pudo ir con ellos porque estaba ocupado; que esa mañana él le había dado a su primo, un veterano, un cheque de $40, que había recibido para él como su compensación quincenal por desempleo a razón de $20 semanales; que vió a Efraín Rodríguez bebiendo cerveza en el vehículo, pero a nadie más;

que lo invitaron a beberse una cerveza, pero no se la bebió; que había visto a Pagán bebiendo licor en muchas otras ocasiones.

Manuel Pascual Báez declaró que vió a los cuatro que pasaron en una guagua para San Sebastián como a las 4:30 p.m.; que luego los vió al regresar; que venían bastante ligero; que calculó en su mente que algo iba a pasar, y al mismo momento sintió el impacto con el árbol y corrió para el sitio del suceso; que se llevó a Efraín Rodríguez, que apestaba a licor, del sitio del accidente.

El Dr. Felipe J. Achecar declaró que cuando llegó al hospital a las 6 p.m., encontró un muchacho muerto, otro estaba en estado comatoso, y el tercero tenía fractura de la espina dorsal, el que estaba en estado comatoso olía a licor: "Parece que había tomado algo. No mucho, pero el licor se siente tomando mucho o poco;" examinó a los otros para ver si habían tomado algo, resultando que sí; no estaban en estado de embriaguez.

Eladio Pérez Sánchez, *lance corporal* de la Policía Insular asignado a Lares, declaró que cuando llegó al hospital después de ocurrido el accidente, interrogó a Pedro Luis Rodríguez, quien le dijo que estaba en la plaza en Lares cuando los otros tres vinieron en la guagua de Pagán; que se montó con ellos y siguieron para San Sebastián; que pararon en una casa y tomaron un palo de anís, y luego emprendieron el regreso a Lares.

En este momento, aun cuando el abogado de las demandantes no se había opuesto a este testimonio, la corte de distrito levantó la cuestión de la admisibilidad del mismo. El abogado de los demandados sostuvo que dicho testimonio era admisible como una declaración contra el interés propio.

La corte inferior eliminó este testimonio y excluyó cualquier otro en cuanto a las manifestaciones hechas por Rodríguez por dos motivos: (1) no era en realidad una declaración contra el interés propio; (2) de cualquier modo, estaba

tan malamente herido que no sabía lo que decía. Además, la corte inferior dijo que "la declaración no solamente es contra él, suponiendo que fuera contra el interés, sino que se le aplica a los otros dos casos también."

El abogado de los demandados ofreció entonces probar con la declaración del doctor que Rodríguez hizo estas manifestaciones espontáneamente en su presencia. La corte de distrito permitió al abogado someter a los fines del récord declaraciones juradas de Pérez Sánchez y Santos Toro Vargas, otro policía. Estas declaraciones fueron insertadas en el récord como ofrecimiento de prueba de lo que los testigos declararían si se les permitiese declarar. Entonces la corte se negó a permitir que declararan a ese efecto.

El ofrecimiento demuestra que los policías habrían declarado que Pedro Luis Rodríguez les dijo que estaba en la plaza de Lares a las 5 p.m. del 22 de octubre de 1946, cuando llegó Pagán con su guagua, acompañado de Adolfo Quiñones y de Efraín Rodríguez Quiñones; que lo invitaron "a fiestar y a dar unas cuantas canciones"; que accedió y se montó en la guagua; que guiando Pagán, fueron a casa de Ramón Estrella en el barrio Juncal de San Sebastián, donde bebió anís y todos los otros, incluso el chófer, bebieron ron y anís; que al regresar a Lares, Pagán manejaba a exagerada velocidad; que al tomar una curva pasó sobre un hoyo, perdió el control del vehículo, saliéndose éste de la carretera y yendo a chocar contra un árbol.

Félix Pagán Molina declaró que como de ocho a nueve de la mañana se encontró con dos amigos, Adolfo Quiñones y Efraín Rodríguez Quiñones; que "cogimos por los negocios tomando cerveza"; que iban en una pisa y corre propiedad de Crespo de quien era empleado; que fué a San Sebastián a ver si conseguían un tambor para la guagua; que iban bebiendo y celebrando el divorcio que Efraín Rodríguez iba a obtener; que durante el viaje de San Sebastián a Lares iban bebiendo; que pararon en una casa para beber

anís; que no cogió pasajeros en dicha ruta porque ese día él no llevaba pasajeros.

En refutación, Bolívar Pagán, abogado de las demandantes, declaró que preparó tanto la demanda original como la emmendada; que por un error personal del abogado éste incluyó la alegación en la demanda original al efecto de que el chófer estaba borracho; y que no tenía ninguna información sobre el estado de embriaguez de éste cuando hizo tal alegación.

██ El primer error que se señala es que la corte inferior erró al resolver que al momento del accidente el chófer actuaba en el curso y atribuciones de su empleo.

Los demandados admitieron en su contestación que la guagua pertenecía a Crespo y que Pagán era su empleado en calidad de chófer. La presunción es por tanto que al momento del accidente el chófer estaba actuando dentro de las atribuciones de su empleo. *Morales* v. *Delia Mejías, Inc.*, 63 D.P.R. 700. Pero esta presunción puede ser controvertida mediante prueba. *Graniela* v. *Yolande, Inc.*, 65 D.P.R. 107, 111.

██ El dueño de un automóvil no es responsable por daños ocasionados por la negligencia de un chófer empleado suyo si se establece mediante prueba que mientras manejaba el vehículo el chófer se apartó del trabajo para realizar algún propósito propio ajeno a los deberes de su empleo. *Ojea* v. *Drug Co. of P. R.*, 40 D.P.R. 652; *Burgos* v. *Sobrinos de Villamil*, 41 D.P.R. 84; *Ramírez* v. *Marín*, 42 D.P.R. 858; *Graniela* v. *Yolande*, supra; *Annotation*, 122 A.L.R. 858; *Maas* v. *Harvey*, 8 S.2d 683 (La., 1942); *Barrett* v. *Employers' Liability Assur. Corporation*, 118 F.2d 799 (C.C.A. 5, 1941); *R. L. Jeffries Truck Line* v. *Brown*, 197 S.W.2d 904 (Ky., 1946); *Baker Driveaway Co.* v. *Clark*, 162 F.2d 181 (C.C.A. 4, 1947); 1 *Restatement, Agency*, secs. 235, 238; 5 Blashfield, *Cyclopedia of Automobile Law and Practice*, edición permanente, sec. 3011, pág. 139. *Cf. Maysonet* v. *Sucn. de Arcelay*, ante, pág. 167.

■ Hubo bastante prueba por parte de los demandados al efecto de que el chófer no llevaba pasajeros mediante paga y no iba en gestiones de su empleo, sino más bien, acompañado de tres amigos, iba en una "gestión particular". *Riley* v. *Standard Oil Co.*, 132 N.E. 97, 98 (N.Y., 1921). Si la corte inferior hubiera creído esta prueba, ni la compañía aseguradora ni el patrono serían responsables. Casos citados en el párrafo anterior; *Arvelo* v. *Rodríguez*, 69 D.P.R. 1004.

■ Además, aun cuando la corte inferior hubiera creído al chófer en cuanto a la naturaleza de su viaje, los demandados no serían responsables. Pagán declaró que los otros tres no eran pasajeros mediante paga, toda vez que ese día él no llevaba pasajeros. Pero también declaró que los otros lo acompañaban en el viaje que hacía a San Sebastián en busca de un tambor para la guagua. Si un peatón hubiera sido lesionado por el vehículo mientras el chófer lo manejaba en tal viaje, podría recobrar daños. Pero si el chófer lleva consigo como su invitado a alguna persona que no necesita para que lo ayude a cumplir su encargo, el dueño no es responsable por las lesiones causadas al invitado por la negligencia del chófer al manejar el vehículo. 5 Blashfield, supra, sec. 3016, pág. 148.

Sin embargo, en sus conclusiones de hecho, la corte de distrito dijo que "no se probó a satisfacción de la Corte que el vehículo se estuviese dedicando a tránsito completamente extraño al curso regular de la empresa; hubo evidencia de que durante el trayecto y antes del accidente, pasajeros tomaron y dejaron la guagua." Tomamos esta manifestación un poco concisa como que significa que la corte inferior no dió crédito a la prueba de los demandados al efecto de que el chófer y sus amigos se dedicaban a una gestión particular cuando ocurrió el accidente. Por el contrario, la corte de distrito aparentemente optó por darle crédito a la declaración un poco dudosa de López Pérez y de Rosa al efecto de que ellos preguntaron cuánto era el pasaje y lo pagaron por

anticipado. Debemos confesar que a la luz de las circunstancias, incluyendo el testimonio del propio chófer y de varios testigos desinteresados, esta declaración parece que tiene las señas de haber sido preparada para hacer frente a las defensas especiales.

Empero, somos renuentes, como siempre, a revocar una sentencia en la teoría de que la corte inferior erró al apreciar la evidencia. James, *Functions of Judge and Jury in Negligence Cases,* 58 Yale L.J. 667. Resolvemos, al discutir un error posterior, que debe concederse un nuevo juicio. Por consiguiente creemos que es más aconsejable celebrar un nuevo juicio en vez de resolver nosotros este error.

El segundo señalamiento es que la corte inferior erró al resolver que los causantes de las demandantes no incurrieron en negligencia contribuyente. La teoría aquí es que aun cuando los tres finados fueran pasajeros, eran culpables de negligencia contribuyente al ir en el vehículo con Pagán sabiendo que éste estaba borracho.

Un demandante que acompañe a un chófer es culpable de negligencia contribuyente y no puede recobrar si recibe lesiones bajo las siguientes circunstancias: (1) el chófer estaba borracho o bajo la influencia del licor a tal extremo que lo hacía un chófer descuidado e incompetente; (2) el demandante sabía o debió saber la condición del chófer; (3) el estado de embriaguez fué un factor contribuyente al accidente. *Lewis* v. *Chitwood Motor Co.,* 115 S.W.2d 1072 (Ark., 1938); *Taylor* v. *Taug.* 136 P.2d 176 (Wash., 1943); *Mercier* v. *Fidelity & Casualty Co. of New York,* 10 S.2d 262 (La., 1942); *Hicks* v. *Herbert,* 113 S.W.2d 1197 (Tenn., 1938); *Sparks* v. *Chitwood Motor Co.,* 94 S.W.2d 359 (Ark., 1936); *Annotation,* 65 A.L.R. 952; II *Torts, Restatement,* sec. 466, comentario *e,* pág. 1233; 4 Blashfield, supra, sec. 2453, págs. 602–9; *Prosser on Torts,* pág. 418; 38 Mich.L.Rev. 556.

Aquí también la dificultad estriba en que la corte inferior resolvió los hechos contra los demandados. En sus con-

clusiones de hecho manifestó que "El hecho de que el chófer tomara licor con otros a quien invitó no es materia para concluir que el chófer dedicara la guagua exclusivamente a ese estado festivo." Siguió diciendo que no hubo negligencia contribuyente por parte de los finados; que el accidente se debió a la velocidad excesiva a que el chófer conducía el vehículo; y que "La prueba sobre ese extremo no dejó convencida a la Corte de que el chófer estuviese borracho, ni que esa fuera la causa del accidente."

Una vez más, preferimos conceder un nuevo juicio por los motivos que se indicarán, más bien que determinar si la corte de distrito cometió manifiesto error al apreciar la prueba sobre este punto. Por tanto dejamos a la corte inferior en el nuevo juicio la consideración de las contenciones de ambos demandados al efecto de que (1) la causa del accidente fué el embotamiento de las facultades del chófer mediante el licor, y de que (2) los finados sabían o debían saber su condición y fueron negligentes contributoriamente al acompañarlo en el vehículo a pesar de tener conocimiento de su condición. Por igual motivo, no tenemos que determinar si la compañía aseguradora tenía derecho a descansar en este caso en la cláusula de la póliza al efecto de que ésta no era responsable por accidentes que ocurriesen mientras el chófer estuviera borracho.(1)

De igual modo creemos innecesario considerar la contención de los demandados de que los cuatro ocupantes del vehículo se dedicaron a una empresa común y por consiguiente que los herederos de tres miembros del grupo están impedidos de radicar demandas predicadas en la negligencia del

(1)Al discutir este punto, los demandados indican que la demanda original alegaba afirmativamente que el chófer estaba en estado de embriaguez mientras manejaba el vehículo. Alegan que la demanda enmendada fué radicada para eliminar esta alegación después que el abogado de las demandantes había recibido su contestación conteniendo sus defensas especiales y se dió cuenta del efecto de su alegación original de que el chófer estaba manejando en estado de embriaguez.

Las demandantes tenían derecho a enmendar sus demandas, y no están obligadas por las alegaciones de su demanda original. Pero la prueba en refu-

cuarto miembro del mismo, Félix Pagán. *Cf.* II *Torts, Restatement,* sec. 491; *Annotation,* 95 A.L.R. 857; *Notes,* 80 U.Pa.L.Rev. 1123, 1127; 12 N.C.L.Rev. 385, según fué impreso de nuevo en 2 Harper, *Readings on Torts,* págs. 862–67; Mechem, *The Contributory Negligence of Automobile Passengers,* 78 U.Pa.L.Rev. 736, 747; 78 U.Pa.L.Rev. 270; 38 Yale L.J. 810; 85 U.Pa.L.Rev. 644; Prosser *on Torts,* pág. 491. Y compare, *Note,* 163 A.L.R. 706; Prosser *on Torts,* pág. 416, *et seq.*

■■ El tercer error nos brinda la base para nuestra decisión en este caso. Aquí los demandados alegan que la corte inferior cometió error al excluir el testimonio de los policías en cuanto a lo declarádoles por Pedro Luis Rodríguez. Su teoría es que éste era admisible como una declaración contra el interés propio.

La sección 35, párr. 4 de nuestra Ley de Evidencia, artículo 397, párr. 4 del Código de Enjuiciamiento Civil, ed. de 1933, copiada de California, dice que es admisible "el acto realizado, o declaración hecha, por un difunto, contra su interés, respecto a sus bienes." Actualmente California tiene una disposición adicional expresamente haciendo admisible una declaración contra el interés pecuniario de un difunto contra su heredero. McBaine, *California Evidence Manual,* secs. 249–51, págs. 352–56; V Wigmore *on Evidence,* sección 1455, pág. 260, escolio 1. Pero al considerar la admisibilidad de declaraciones contra el interés propio, las cortes raras veces han distinguido entre interés pecuniario e interés respecto a sus bienes. Por ejemplo, "Una declaración contra interés respecto a los bienes es frecuentemente llamada por las cor-

tación del abogado de ellas levanta la cuestión de si él ha violado la Regla 11 de las Reglas de Enjuiciamiento Civil. La Regla 11 provee "La violación voluntaria de esta Regla por parte de un abogado puede dar lugar a que se le someta a acción disciplinaria." Toda vez que ésta es la primera ocasión en que nos referimos a la Regla 11 y en vista de todas las circunstancias, no tomaremos acción alguna en este caso. Pero queremos hacer constar con claridad que los abogados que voluntariamente infrinjan dicha Regla 11 en el futuro estarán sujetos a la correspondiente acción disciplinaria.

tes una declaración contra interés pecuniario.'' Jefferson, *Declarations Against Interest: an Exception to the Hearsay Rule,* 58 Harv.L.Rev. 1, 35. Es cierto que en algunos de nuestros casos anteriores solamente estaban envueltos intereses en bienes. *Hernández* v. *Fernández,* 17 D.P.R. 112; *Aponte et al.* v. *Garzot et al.,* 28 D.P.R. 629; *Santiago et al.* v. *Santiago et al.,* 28 D.P.R. 960, 966; *Sosa Fernández* v. *Sosa Oliva,* 42 D.P.R. 887, revocado por otros motivos en 68 F.2d 338 (C.C.A. 1, 1933). Pero en casos recientes aparentemente presumimos que una declaración contra interés propio sería admisible, siempre y cuando cumpliese con todos los otros requisitos para ello, en casos de compensación por accidentes del trabajo, que envolvían intereses pecuniarios más bien que de propiedad. *Montaner, Admor.* v. *Comisión Industrial,* 54 D.P.R. 781; *Tomás* v. *Comisión Industrial,* 59 D.P.R. 860; *Ruiz* v. *Comisión Industrial,* 60 D.P.R. 228, 234. De igual modo, bajo una interpretación liberal del párr. 4, éste puede razonablemente interpretarse como que cubre declaraciones contra el interés pecuniario envuelto en una reclamación de daños y perjuicios como ésta.

En términos generales, los requisitos para la admisión de una declaración contra el interés propio son: (1) el declarante debe haber muerto; (2) la declaración debe ser contra el interés pecuniario o de propiedad del declarante a la fecha de la declaración; (3) la declaración debe consistir de hechos conocidos personalmente por el declarante; (4) el declarante no debe haber tenido un motivo probable para falsificar los hechos declarados; (5) el declarante se dió cuenta o como una persona corriente debió haberse dado cuenta de que la declaración era contra su propio interés. Jefferson, supra, págs. 1, 17–18, 32, 34–35; V Wigmore, supra, secs. 1456–75, págs. 260–80; Morgan, *Declarations Against Interest in Texas,* 10 Tex.L.Rev. 399; *Aetna Life Ins. Co.* v. *Strauch,* 67 P.2d 452 (Okla., 1937); *Windorski* v. *Doyle,* 18 N.W.2d 142 (Minn., 1945); *Halvorsen* v. *Moon & Kerr Lumber Co.,*

91 N.W. 28 (Minn., 1902). *Cf. Reglas* 509, 503, A.L.T., *Model Code of Evidence;* Morgan, *Hearsay Dangers and the Application of the Hearsay Concept,* 62 Harv.L.Rev. 177, 195.

Una vez cumplidos estos requisitos, se ha permitido a los demandados ofrecer la declaración de la víctima cuando, como ocurre aquí, sus herederos o causahabientes han radicado pleitos por la muerte ilegal. Jefferson, supra, págs. 34–35; *Rudisill* v. *Cordes,* 5 A.2d 217 (Pa., 1939); *Alverson* v. *Little Cahaba Coal Co.,* 77 So. 547 (Ala., 1917); *Murdock* v. *Adamson,* 77 S.E. 181 (Ga., 1913); *Dixon* v. *Union Ironworks,* 97 N.W. 375 (Minn., 1903); *Walker* v. *Brantner,* 52 Pac. 80 (Kans., 1898).

Al tratar de determinar en este caso si la declaración de Pedro Luis Rodríguez cumplió con los cinco requisitos, basta sólo discutir el segundo y el quinto. En cuanto al segundo, algunas cortes, incluyendo ésta, han incurrido en el mismo error en que incurrió la corte inferior. Como hemos visto, uno de los motivos por los cuales la corte de distrito excluyó la declaración de Rodríguez fué que ésta se ofrecía no solamente contra su causahabiente sino también contra las demandantes en los otros dos casos, que no tenían relación alguna con Rodríguez. Pero la cuestión de nexo jurídico de interés nada tiene que ver con respecto a la admisibilidad de declaraciones contra interés propio, si bien juega su papel sobre las admisiones. Más bien la norma es si la declaración fué en contra de los intereses del *propio declarante* al momento de hacerla. Establecido eso, la declaración es admisible siempre y cuando sea pertinente, independientemente de la relación, si alguna hay, entre el declarante y la parte en el pleito contra quien se ofrece.

Jefferson, supra, explica este punto como sigue (pág. 63): "Existe bastante confusión en la jurisprudencia con respecto a las excepciones de referencia sobre admisiones personales, admisiones vicarias y declaraciones contra el interés propio. Estas son tres excepciones distintas a la regla de referencia,

los principios de las cuales deben permanecer separados. El no distinguir las cortes la diferencia entre estas tres excepciones, ha dado lugar al desarrollo de una terminología errónea y a resultados confusos. La base de la excepción para declaraciones contra el interés procede de la calidad perjudicial de la declaración o del hecho expuesto que otorga a la declaración algún elemento de veracidad y compensa hasta cierto punto la ausencia del juramento y la oportunidad del contrainterrogatorio. *En consecuencia una declaración contra interés propio es admisible siempre que sea pertinente, no importa cuál sea la relación entre el declarante y la parte contra quien se ofrece.''* (Bastardillas nuestras). Al mismo efecto, Morgan, supra, 10 Tex.L.Rev. a las págs. 406–8; V Wigmore, supra, secs. 1459, 1474–5, págs. 265, 279–80; Muñoz Amato, La Regla de la Prueba de Referencia y sus Excepciones, XIII Rev.Jur. de la U.P.R. 13, 81, 82 (versión en Español), 32 Calif.L.Rev. 31, 55–56 (versión en inglés). Véanse también, Morgan, *Admissions as an Exception to the Hearsay Rule,* 30 Yale L.J. 355; Morgan, *The Rationale of Vicarious Admissions,* 42 Harv.L.Rev. 461.

Toda vez que es innecesario nexo jurídico de interés alguno para que una declaración contra interés propio sea admisible, Jefferson, supra, critica con toda propiedad a la pág. 67, los casos en que la admisibilidad de una declaración contra interés propio se hace depender de si la causa de acción se concede mediante herencia o como una causa de acción independiente. Convenimos con su criterio en que si el declarante, como aquí ocurre, tenía una aparente reclamación por lesiones recibidas al tiempo de su declaración, ésta (pág. 67) es ''admisible contra cualquier parte cuando fuere pertinente, aun cuando la causa de acción [después de su muerte] de su pariente sea una reclamación independiente.'' Los casos mejor resueltos por consiguiente admiten tales declaraciones contra personas no relacionadas con el declarante por nexo jurídico de interés. *Pennsylvania R. Co.* v. *Rochinski,* 158

256

F.2d 325 (C.C.A., D.C., 1946), comentado en 15 Geo.Wash.L.
Rev. 486; *Weber* v. *Chicago, R.I. & P. Ry. Co.,* 151 N.W.
852 (Iowa, 1915); *Georgia Railroad & Banking Co.* v. *Fitz-
gerald,* 34 S.E. 316 (Ga., 1899); *Dixon* v. *Union Ironworks,*
supra; *Walker* v. *Brantner,* supra.

En vista de lo anterior, cometimos error en *Montaner* v.
*Comisión Industrial,* supra, y *Tomás* v. *Comisión Industrial,*
supra, en tanto en cuanto dichos casos exigían una demos-
tración de nexo jurídico de interés entre el declarante y la
parte contra quien se ofrece la declaración como requisito
previo a la admisibilidad de una declaración contra el interés
propio. Muñoz Amato, supra, págs. 81–82.

Pasando al quinto requisito, el problema es si Pedro
Luis Rodríguez se daba cuenta al momento en que hacía su
declaración de que podía tener una causa de acción que desa-
parecería con su declaración. En muchos casos esto no es
una cuestión difícil ya que la declaración de ordinario con-
siste de una mera manifestación al efecto de que el decla-
rante tuvo la culpa del accidente. Pero aquí el problema es
más complicado. Escasamente podemos imputarle como per-
sona razonable el conocimiento de que le estaba proporcio-
nando base para la defensa especial de la compañía asegu-
radora cuando dijo en efecto que él no era un pasajero me-
diante paga. Decir que él se daba cuenta de que esta mani-
festación establecería esta defensa equivaldría a afirmar que
él sabía lo que este Tribunal ha hallado tan difícil para
resolver. Véase *Arvelo* v. *Rodríguez,* supra. No podemos
llegar a un resultado tan poco práctico.

Por otro lado, su declaración al efecto de que todos ellos
habían estado bebiendo juntos se ajusta más a los hechos de
los casos que admiten tales manifestaciones. Creemos que
la persona corriente sabe o debe saber que no recibirá com-
pensación si viaja con un chófer en estado de embriaguez,
teniendo ella conocimiento de dicho estado. Véase *Windorski*
v. *Doyle,* supra, pág. 147. Esta porción de la declaración de

Rodríguez era por tanto admisible como una declaración contra interés propio. Y una vez que esa parte de la manifestación es admitida, se lleva consigo todas las partes esenciales de la misma: la declaración de que estuvieron metidos en fiesta es necesariamente inseparable de la declaración de que no eran pasajeros mediante paga. Toda la manifestación en consecuencia era admisible como un todo. *Aetna Life Ins. Co.* v. *Strauch,* supra, pág. 455; V Wigmore, supra, sec. 1465, págs. 271–72.

■ Las demandantes arguyen que de cualquier modo la declaración de Rodríguez era inadmisible porque estaba a punto de morirse y por consiguiente incapaz de dar una manifestación racional al momento de la declaración. *Cf.* sec. 39, párr. 1 de la Ley de Evidencia, art. 401, párr. 1, Código de Enjuiciamiento Civil, ed. de 1933. Pero de la prueba no surgió que Rodríguez estuviera enteramente fuera de sí en ese momento. Por el contrario, la presunción es que estaba racional; además, los demandados ofrecieron probar con el doctor que su manifestación fué espontánea. Y la jurisprudencia resuelve que una declaración contra el interés propio es admisible aun cuando el declarante al hacer la manifestación presienta la inminencia de su muerte. *Jefferson,* supra, págs. 55–56, y casos citados.

■ Finalmente, sin referirnos a la doctrina de las declaraciones contra interés propio, bajo las circunstancias de este caso, la manifestación hecha por Rodríguez en la primera oportunidad casi inmediatamente después de ocurrir el accidente en que fué lesionado seriamente, es una exclamación o manifestación espontánea y es admisible como una excepción a la regla de referencia. Muñoz Amato, *Res Gestae,* 14 Rev. Jur. de Puerto Rico 91, 111–18; VI Wigmore, supra, sec. 1750, pág. 142, y casos citados; Morgan, *A Suggested Classification of Utterances Admissible as Res Gestae,* 31 Yale L.J. 229, 238–39; *Note,* 32 Cornell L.Q. 115; Morgan, *Some Suggestions for Defining and Classifying Hearsay,* 86

U.Pa.L.Rev. 258, 266. Véanse *Pueblo* v. *Alvarez*, 47 D.P.R. 161; *Pueblo* v. *Arenas*, 39 D.P.R. 16; *Pueblo* v. *Muñoz*, 68 D.P.R. 171, y casos citados; *Beausoliel* v. *United States*, 107 F.2d 292 (C.C.A., D.C., 1939); *Lende* v. *Ferguson*, 23 N.W.2d 824 (Iowa, 1946). *Cf. Pueblo* v. *Lugo*, ante, pág. 145.

 Como hemos visto, si la corte de distrito hubiera dado crédito al hecho de que Pagán no llevaba pasajeros mediante paga y que sus acompañantes sabían que él estaba manejando borracho y su condición contribuyó al accidente, los demandados no serían responsables. La declaración de Pedro Luis Rodríguez al policía sobre estos extremos era en consecuencia de mucha importancia. Y en este caso específico, donde la evidencia de las demandantes era tan pobre, el error de la corte inferior al excluirla fué perjudicial a los demandados. Por este motivo, revocaremos las sentencias a favor de los demandados y concederemos un nuevo juicio.

 El cuarto error se refiere solamente al caso en que Gloria Quiñones demandó por la muerte de su hermano, Adolfo Quiñones. El error es que ella ni alegó ni probó una causa de acción. Empero, alegó ella y declaró que era la única heredera de su hermano. Declaró que dependía de su hermano para su subsistencia. Estos hechos eran suficientes para darle a ella derecho a demandar por su muerte ilegal. *Rodríguez* v. *Ell Tee, Inc.*, 57 D.P.R. 948; artículo 143, Código Civil, ed. de 1930.

 El quinto señalamiento es que la corte inferior cometió error al no conceder la moción de nuevo juicio. Esta moción estaba basada en parte en evidencia recién descubierta. Los demandados adhirieron a su moción copia certificada de un pleito de divorcio radicado ante la Corte de Distrito de Aguadilla contra Efraín Rodríguez Quiñones. También acompañaron una declaración jurada del secretario del abogado que radicó la demanda al efecto de que Efraín Rodríguez estaba frente a su oficina con Pagán el día antes del acci-

dente; que el secretario le dijo a Efraín que su caso de divorcio se iba a ver pronto; que Efraín y Pagán se alegraron y decidieron celebrar el próximo día yéndose de juerga; que el día del accidente él los vió en varias ocasiones manejando frente a su oficina dando la impresión de que habían estado bebiendo. Una declaración jurada del mensajero del abogado corroboró la historia del secretario. Esta evidencia era pertinente porque la esposa de Efraín declaró que al momento del accidente ella vivía con él y negó que lo hubiera demandado para divorciarse, mientras que la teoría de los demandados fué que cuando ocurrió el accidente los cuatro ocupantes del vehículo estaban en juerga celebrando el futuro divorcio de Efraín.

En apoyo de su moción de nuevo juicio, los demandados también ofrecieron como evidencia recién descubierta la declaración jurada de un contratista al efecto de que López Pérez, quien declaró que él era un vendedor ambulante y había ido en el vehículo público mediante paga, trabajó todo el día en su oficio de ayudante de albañil en una obra del declarante a varios kilómetros del sitio del accidente.

La moción de nuevo juicio también estaba predicada en la exclusión del testimonio de los policías en cuanto a la declaración de Pedro Luis Rodríguez y en la alegación de que la preponderancia de la evidencia demostró que el vehículo estaba siendo usado para un fin completamente extraño al negocio del demandado Crespo.

No nos detenemos a determinar si la moción de nuevo juicio fué radicada fuera de tiempo o si, como alegan los demandados, la corte inferior abusó de su discreción al denegarla. Los demandados tendrán una oportunidad de presentar esta prueba adicional en el nuevo juicio que ya hemos resuelto ordenar.

El sexto error es que la compañía de seguros no era responsable en vista de los términos de la póliza de que no cubría un accidente cuando el vehículo no estuviera siendo

260

usado para transportar pasajeros mediante paga o cuando el chófer estuviera en estado de embriaguez. Es innecesario añadir más a lo que ya hemos dicho sobre estas cuestiones.

El séptimo error es que la corte inferior actuó con pasión, prejuicio y parcialidad. Este error también es académico en vista del resultado a que hemos llegado.

Las demandantes han apelado de las sentencias por el fundamento de que lo concedido no es suficiente. Nuestra resolución de que es necesario un nuevo juicio hace académica esta apelación.

*Las sentencias de la corte de distrito serán revocadas y los casos devueltos para la celebración de un nuevo juicio.*

El Juez Presidente Señor De Jesús no intervino.