RAMÓN MONTANER, en su carácter de ADMINISTRADOR DEL FONDO DEL SEGURO DEL ESTADO, recurrente, *v.* LA COMISIÓN INDUSTRIAL DE PUERTO RICO, compuesta por los SRES. MANUEL LEÓN PARRA, Presidente, y F. PAZ GRANELA y JUAN M. HERRERO, Comisionados Asociados, recurrida, y PAULA TIRADO VILLOT, peticionaria ante la Comisión.

Núm. 154.—*Sometido:* Enero 9, 1939. *Resuelto:* Mayo 12, 1939.

*Hon Procurador General B. Fernández García, Emilio de Aldrey, Procurador General Auxiliar, Víctor J. Vidal González, Asesor Legal del Fondo del Estado y G. Atiles Moreu, Asesor Legal Auxiliar,* abogados del recurrente; *M. León Parra,* abogado de la recurrida; *Ismael Soldevila,* abogado de la peticionaria ante la Comisión Industrial.

El Juez Asociado Señor Travieso emitió la opinión del tribunal.

Lorenzo Tirado, de 80 años de edad, padre de la peticionaria, perdió su vida como consecuencia de lesiones que recibiera al caerse de una carreta de bueyes en la que se dirigía a la Central "Rufina" con el objeto de cobrar allí una suma que semanalmente le pagaba dicha central. La caída de Tirado fué motivada por un choque entre la carreta y una máquina de la Central. El Administrador del Fondo del Seguro del Estado denegó la compensación: (*a*) por no haber ocurrido el accidente en el curso ni como consecuencia de trabajo alguno que Tirado desempeñara para el patrono; y (*b*) por no ser Tirado un obrero a tenor de lo dispuesto en la Ley de Compensaciones por Accidentes del Trabajo, de 18 de abril de 1935 (Ley núm. 45 de 1935 (1) pág. 251).

En 28 de abril de 1938 la Comisión Industrial revocó la decisión del Administrador del Fondo y resolvió que Lorenzo Tirado en el momento de su muerte era un obrero del patrono asegurado y que su hija de 60 años de edad, la peticionaria, era su beneficiaria. Solicitada la reconsideración ésta fué denegada. En agosto 30, 1938, el Administrador del Fondo radicó la presente solicitud de revisión en la que alega que la Comisión erró:

1. Al negarse a admitir en evidencia una declaración jurada prestada por Tirado antes de su muerte, en la que hacía constar que él no trabajaba para la central y que lo que de ésta recibía era una mera gratificación.

2. Al declarar que Tirado era al tiempo de su muerte un trabajador del patrono.

3. Al resolver que la peticionaria dependía para su subsistencia de lo que ganaba Lorenzo Tirado.

4. Al declarar a la peticionaria incapacitada para el trabajo en ausencia de prueba competente sobre tal extremo.

5. Al declarar que "lo que se exige a la persona mayor de 18 años para ser considerada como dependiente, es que

no pueda subvenir a sus necesidades con su trabajo propio por incapacidad producida por la edad, o enfermedad, etc.''

6. Al resolver que la limitación expuesta en el párrafo 5, inciso 5, art. 3, de la Ley de Compensaciones, en relación con la suspensión de pagos a los beneficiarios, con excepción de la viuda o viudo, al llegar éstos a la edad de 18 años, es aplicable exclusivamente a los beneficiarios menores de edad.

7. Al negarse a admitir en evidencia las declaraciones de dos testigos, relacionadas con lo que declarara antes de su muerte el lesionado Tirado, por entender que dichas declaraciones son pruebas de referencia.

Discutiremos los alegados errores agrupando aquellos que se refieran a cuestiones similares.

■ 1 y 7. En la declaración ofrecida en evidencia y rechazada por la Comisión, el declarante dice que en el momento en que ocurrió el accidente él iba a la central ''a cobrar el importe de $1.50 con que me gratificaba la referida central cuando yo no trabajaba y en esa semana yo no había trabajado ni un solo día, pues hacía como dos meses que yo no trabajaba.'' Y después de relatar cómo ocurrió el accidente, aparece el declarante insistiendo en hacer constar enfáticamente que él no era empleado de la central, y dice: ''Repito que yo no era trabajador de la Central Rufina porque yo no quiero trabajar voluntariamente.''

Sostuvo la Comisión que esa declaración, hecha por el lesionado dos meses después del accidente, no era admisible en evidencia como parte del *res gestae* y que tampoco lo era bajo la regla que establece el artículo 93, apartado 1, de la Ley de Evidencia, como declaración hecha por Tirado en perjuicio propio, porque no ha sido ofrecida en perjuicio de los intereses de Tirado, y sí en perjuicio de una tercera persona, su hija, ''cuyo derecho a la compensación nace, no por ser heredera de Tirado, sino por hallarse en el grupo de personas a quienes la Ley de Compensaciones por Accidentes del Trabajo, protege del hecho de la dependencia.''

Es evidente que la declaración de Tirado ofrecida por el recurrente no era admisible como parte del *res gestae,* por no ser contemporánea con el acto del cual se alega ser parte y ser la mera narración de hechos pasados. 22 C. J. 451, sec. 543; *Vicksburg & Meridian Railroad* v. *O'Brien,* 119 U. S. 99, 30 L. ed. 299; *Durkee* v. *Central Pacific R. R. Co.,* 69 Cal. 533; *Frye* v. *St. Louis, etc. R. R. Co.,* 200 Mo. 377,. 98 S. W. 566; *Torres* v. *Domínguez Conde,* 35 D.P.R. 267.

En el caso de *Sullivan* v. *Henry Gut & Co.,* 148 Ill. App. 538, la Corte Suprema de Illinois se expresó así:

"Pero existen también excelentes autoridades para sostener la regla de que las declaraciones o admisiones del finado en una acción por su muerte—excepto cuando el estatuto permite y la acción se funda en la supervivencia de la acción que el finado hubiera tenido por el dolor y sufrimientos entre el momento de recibir la lesión y el momento de su muerte—no son admisibles contra el representante legal o contra los deudos del finado, a menos que constituyan parte del *res gestae.* (*Eldredge* v. *Barton,* 232 Mass. 183, 122 N. E. 272.) Así, en un caso reciente, se observa que la causa de acción 'es una no conocida en el derecho común, sino creada por estatuto, y los beneficiarios la adquieren, no por derecho de herencia o sucesión del finado, y sí solamente porque han sido mencionados en el estatuto como los recipientes del fondo recobrado por razón de la muerte causada por el acto negligente o torticero del demandado.' Y sigue diciendo la corte: 'La causa de acción nunca nació hasta que ocurrió la muerte del intestado, y no para beneficio de él y sí de aquellos designados por el estatuto para recibir el fondo recobrado' . . . . (*Dowell* v. *City of Raleigh,* 173 N. C. 197, 91 S. E. 849; véase *Marks* v. *Reissinger,* 35 Cal. App. 44, 169 Pac. 243)."

Véase: 10 Cal. Jur. 1105, sec. 335; 2 Jones on Evidence (2d ed.) pág. 1691.

La peticionaria no basa su derecho a la compensación que solicita en el hecho de ser hija o heredera de Lorenzo Tirado, y sí en el hecho de que ella dependía del salario que ganaba el finado para su sostenimiento. No erró la Comisión al negarse a recibir en evidencia la declaración de Tirado ofrecida por el recurrente.

■ 2. El segundo señalamiento presenta una mera cuestión de hecho: ¿Era Lorenzo Tirado, en la fecha del accidente, un trabajador del patrono? La Comisión Industrial, después de considerar la prueba aducida por la peticionaria decidió la cuestión en la afirmativa. La prueba consistió en las declaraciones de José Antonio Rodríguez, empleado del departamento de contabilidad de la Central Rufina, de Zoilo Santos, maquinista de la locomotora que causó el accidente, de Eustaquio Torres Tirado, hijo del finado Lorenzo Tirado, y de la peticionaria, todas ellas al efecto de que el finado, antiguo empleado de la central, hasta el día del accidente estuvo empleado como celador de las piezas de cañas para evitar que alguien les pegara fuego y vigilar para que los muchachos no cogieran las cañas. Toda esa prueba, que no fué contradicha en manera alguna por el recurrente, es a nuestro juicio suficiente para sostener el fallo de la Comisión, el cual debemos respetar, pues es a la Comisión a la que corresponde la función de apreciar y pesar la prueba y de juzgar sobre la credibilidad de los testigos.

■ 3 y 4. Si la peticionaria dependía o no para su subsistencia de lo que ganaba el obrero fallecido o si dicha peticionaria estaba o no incapacitada para el trabajo, son también cuestiones de hecho que esta corte no está autorizada para revisar a menos que hubiese una carencia absoluta de prueba para sostener el fallo de la Comisión.

En la resolución recurrida la Comisión Industrial se expresó así:

"Paula Villot Tirado, hija del obrero occiso, declaró que su padre le daba semanalmente seis reales y en ocasiones hasta un dólar, con lo que atendía a su subsistencia, y que cuando se le terminaba esta cantidad antes de concluir la semana, se ayudaba con lo que le pagaban por el lavado que hacía de alguna ropa a sus vecinos, obteniendo así 20 centavos semanales más o menos; que su padre le mandaba el auxilio dicho, unas veces con el hermano de la declarante, Eustaquio Torres Tirado, y otras personalmente se lo iba a llevar él mismo. Que ella es una mujer de 60 años, y en efecto tal es su apariencia; que se encuentra débil para trabajar de un manera regular, encontrando

además obstáculos para obtener trabajo por un descoloramiento que sufre del pigmento de la piel de sus manos, que siendo ella una mujer de color hace que éstas sean blancas; y por este motivo, en ocasiones en que ha ido a solicitar trabajo como cocinera, que es su oficio, en algunas casas ha sido rechazada su oferta.

"El extremo de que su padre Lorenzo Tirado cuando no iba personalmente a llevarle el auxilio semanal que regularmente le enviaba, lo remitía con Eustaquio Torres, hermano de la declarante, fué confirmado por éste.

"Es claro en nuestra opinión, que Paula Villot Tirado, dependía para su subsistencia de una manera substancial del trabajo de su padre, el obrero occiso Lorenzo Tirado . . . ."

Hemos examinado la transcripción de la evidencia y encontramos justificadas las conclusiones de la Comisión en cuanto al estado de dependencia e incapacidad de la peticionaria.

5 y 6. Estos dos señalamientos no ameritan una seria y detenida consideración. La mera lectura del estatuto bastará para dejar patente la frivolidad de las cuestiones levantadas en uno y otro señalamiento.

La "Ley de Compensaciones por Accidentes del Trabajo," aprobada en 18 de abril de 1935 (Leyes de ese año, pág. 251), en su Artículo 3, inciso 5, párrafos 2, 5 y 6, dispone:

"COMPENSACIÓN EN CASOS DE MUERTE

"5.— . . . . . . . . . . .

"Si el obrero o empleado dejare una viuda, padres, hijos, legítimos o ilegítimos, o hijos póstumos, fueran éstos o no naturales o adoptivos, o nietos, cualquiera de los cuales dependiera total o parcialmente para su subsistencia de lo que ganaba el obrero o empleado fallecido al tiempo de su muerte, recibirán una compensación de mil (1,000) dólares a tres mil (3,000) dólares que se graduará en atención a la capacidad económica del obrero o empleado fallecido y sus probabilidades de vida, de acuerdo con las reglas que deberá preparar el Administrador del Fondo del Estado.

"* * * * * * *

"Al volver a casarse la viuda o viudo los pagos parciales concedídosle para su beneficio cesarán por completo; y cesarán igualmente al morir cualquiera otro de los beneficiarios a quien se estuviere ha-

ciendo tales pagos parciales y en casos de menores cesarán igual-
mente tales pagos al llegar éstos a la edad de 18 años, a menos que
estuvieran incapacitados para el trabajo.

"Si los beneficiarios fueren menores de edad o incapacitados, el
Administrador tomará las medidas que crea de lugar y llevará a
cabo aquellas gestiones que sean necesarias ante las cortes . . ."

El lenguaje del estatuto es tan claro que no se necesita
un gran esfuerzo mental para darse cuenta del propósito del
legislador. A nuestro juicio la intención legislativa puede
expresarse así:

Si al fallecer un obrero deja un hijo mayor de 18 años
de edad, incapacitado para el trabajo y dependiente total o
parcialmente para su subsistencia de lo que ganaba su padre,
ese hijo tendrá derecho a recibir compensación en la forma
provista por la ley, mientras dure su incapacidad y hasta
que se haya agotado la suma concedida para ser pagada al
beneficiario.

Si al fallecer el obrero el hijo que le sobrevive tiene menos
de 18 años de edad, dicho hijo tendrá derecho a compensa-
ción si dependía total o parcialmente para su subsistencia de
lo que ganaba su padre, sin tener en cuenta su capacidad o
incapacidad para el trabajo. Al llegar a la edad de 18 años,
el menor perderá todo derecho a compensación, a menos que
se demuestre que está incapacitado para el trabajo.

Habiéndose probado a satisfacción de la Comisión Indus-
trial que la peticionaria dependía en parte para su subsis-
tencia de lo que ganaba su padre Lorenzo Tirado y que dicha
peticionaria estaba incapacitada para el trabajo, la Comisión
no erró al sostener su derecho a recibir la compensación pro-
vista por el estatuto.

*La resolución recurrida debe ser confirmada.*