# 98 DTA 172

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE SAN JUAN**

ASOCIACION DE RESIDENTES DE COLINAS DE CUPEY, ET AL
Demandantes

v.

JUNTA DE PLANIFICACION Y HABIPRO DEVELOPMENT CORP.
Demandados

Núm. KLRA-96-00465

San Juan, Puerto Rico, a 22 de abril de 1998

Panel integrado por su Presidenta, Jueza Fiol Matta,
la Jueza Rodríguez de Oronoz y el Juez Gierbolini

Fiol Matta, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Este recurso se presentó originalmente como una petición de *mandamus* ante el Tribunal de Primera Instancia, junto a una moción en auxilio de jurisdicción. Por entender que se trataba realmente de un recurso de revisión, el tribunal ordenó su traslado mediante orden de 23 de diciembre de 1996. El 26 de ese mes, la parte recurrente informó que notificó personalmente a las partes recurridas con copia de la demanda, el emplazamiento y la orden de traslado, el 24 de diciembre de 1996.

En su primera comparecencia, Habipro Development Corporation (Habipro) solicitó la desestimación del recurso por falta de jurisdicción de este Tribunal sobre la causa y sobre su persona, esto último porque no fue emplazada ante la petición original del *mandamus*. Posteriormente, el 21 de febrero de 1996, sin alegación jurisdiccional alguna, Habipro solicitó que en auxilio de nuestra jurisdicción ordenáramos a la Asociación que cesara de impedir la continuación de las obras en el predio objeto de este recurso.

El 11 de marzo de 1997, con el beneficio de la comparecencia de ambas partes, ordenamos la paralización de todo trámite, actividad, movimiento de tierra y trabajo en el predio en controversia hasta tanto emitiéramos nuestra decisión. También denegamos la solicitud de Habipro y denegamos la desestimación del recurso. Resolvimos entonces y reiteramos ahora que *"al someterse Habipro a nuestra jurisdicción mediante su solicitud de orden en auxilio de jurisdicción, quedó subsanado cualquier defecto en la notificación del recurso que pueda haber resultado de la reclasificación del recurso de mandamus como uno de revisión, motu proprio por el Tribunal de Primera Instancia y su remisión a este Tribunal, todo ello antes de emitirse los emplazamientos correspondientes"*. Además, ordenamos a Habipro y a la Junta de Planificación mostrar causa por la cual no debiera revocarse la resolución recurrida. Ambas partes comparecieron y a la luz de lo expuesto resolvemos revocar dicha resolución.

### I

La controversia que nos ocupa se remonta al 1971, cuando se presentó ante la consideración de la Junta de Planificación la consulta Núm. 71-035URB para el desarrollo de la Urbanización Colinas de Cupey. La Junta aprobó la consulta con la condición de que el proyectista destinara parte de los terrenos para facilidades vecinales. Los terrenos así dedicados fueron zonificados como públicos (P) y una porción se designó para el uso de escuela. Esta nunca se construyó y desde entonces los vecinos han utilizado el predio como parte del parque recreativo de la urbanización. En 1989, la demandada Habipro presentó una consulta de ubicación ante la Junta de Planificación para desarrollar un proyecto de urbanización en este predio. La Junta denegó esta consulta mediante resolución notificada al

proponente el 20 de julio de 1989. Entre las razones para denegar lo solicitado, la Junta expresó que el terreno era público, lo cual requería su rezonificación. Además, en ese proceso de rezonificación debía presentarse evidencia de que la Administración de Reglamentos y Permisos (ARPE) había liberado el predio del uso de escuela.

En 1993, a solicitud de Habipro, ARPE liberó el terreno de la condición de uso de escuela. En el proceso que dio lugar a la resolución de ARPE los vecinos de Colinas de Cupey fueron notificados, se celebró vista pública y participó activamente la Asociación aquí recurrente, oponiéndose a la solicitud de Habipro. Al liberar el predio de la condición de uso de escuela, ARPE expresó:

*"...este acuerdo se condiciona a que el uso futuro a darse a los referidos terrenos deberá ser autorizado por la Junta de Planificación mediante una consulta de ubicación o un cambio en la zonificación de los mismos, toda vez que estos terrenos ubican actualmente en un distrito de zonificación "P".* (Resolución ARPE, 1 de junio de 1994, pág. 12).

El 8 de febrero de 1995, Habipro presentó ante la Junta de Planificación una *"Solicitud de Variación o Dispensa a Disposiciones Reglamentarias".* En la misma informaba que la variación solicitada era el desarrollo para propósitos residenciales del terreno *"P"* que se había liberado del uso de escuela de manera que se le permitiera urbanizar como *"R3"* un terreno clasificado P. El 16 de marzo de 1995, Habipro presentó el proyecto como solicitud de reapertura y enmienda a la consulta original 71-035-URB. Mediante acuerdo del 10 de abril de 1995, recogido en resolución certificada el 5 de mayo de 1995, la Junta autorizó la *"enmienda"* solicitada. Esta, según dicho acuerdo, consiste de *"adicionar al proyecto originalmente aprobado... la construcción de 15 apartamentos, en una parcela de 3,227.99 metros cuadrados".* La resolución no contiene determinaciones de hechos ni conclusiones de derecho, limitándose a exponer que la Junta consideró la solicitud y *"después del debido análisis de los argumentos de la parte proponente, consideró razonable la petición formulada".* La Junta no hizo expresión alguna respecto a la zonificación del predio, a pesar de que el documento que recoge el acuerdo reconoce que la parte proponente solicitó *"que se regresaran los terrenos a su zonificación anterior R-3".* De la certificación de notificaciones de la mencionada resolución surge que los colindantes y vecinos no fueron notificados porque *"no hay listado".*

El 27 de agosto de 1996, la Asociación escribió a la Junta. Expuso que los residentes se enteraron de los planes de construcción al observar camiones y empleados de la firma recurrida y que no se les había notificado de procedimiento alguno. Alega, además, que la comunidad sufrirá daños al perder parte de sus facilidades pasivas, así como por el impacto al sistema de acceso controlado, el agravamiento de las inundaciones y presión de agua que ya sufren y la edificación de un muro de cemento de cuatro pisos pegado a los patios de varias residencias. La Junta no contestó la carta. Ante nosotros la Asociación alega que la autorización solicitada por Habipro requiere la rezonificación del predio, lo cual, a su vez requiere la celebración de vista pública, con notificación previa a los vecinos. Alega, además, que el procedimiento de variación no era aplicable a la solicitud de Habipro.

La Junta expone en sus escritos que los daños que puedan sufrir los vecinos de Colinas de Cupey son *"auto infligidos por la falta de diligencia en el reclamo de sus derechos"* (moción de 3 de febrero de 1997, pág. 2). La Junta acepta que no se notificó a los vecinos del procedimiento ni de la resolución, pero alega que no había que notificarles porque no eran *"interventores reconocidos"* ni partes formales en el proceso. Realmente, no acertamos a precisar el fundamento de este argumento, pues es evidente que los vecinos no podían solicitar reconocimiento como interventores ni reclamar sus derechos si desconocían del procedimiento. (Moción de desestimación y en oposición, pág. 3). Obviamente, este planteamiento no merece mayor discusión.

Alega la Junta que aun cuando la Sección 7.02 de su Reglamento para Procedimientos Adjudicativos (Reglamento de Adjudicación) dispone que la solicitud de enmienda a una consulta debe presentarse de la misma manera que una consulta nueva, ello no significa que la agencia venga obligada a considerarla como una nueva consulta. Por el contrario, la decisión de considerar una enmienda como consulta nueva es discrecional de la Junta. Así, a pesar de que el proyectista solicitó "reapertura y enmienda", la Junta argumenta que realmente *"[n]o se trata de una reapertura a una consulta vencida... sino de una enmienda a una consulta original, sobre la cual en un momento dado la Junta ejercitó su jurisdicción".* (Moción de desestimación y en oposición, pág. 9).

En cuanto a la necesidad de notificación a los vecinos y celebración de vista pública, la Junta aduce que ello también era discrecional en este caso, a tenor con la Sección 7.01 del Reglamento de Adjudicación. Señala que no abusó de su discreción al decidir que no era necesario notificar a los vecinos ni celebrar vista pública por cuanto el desarrollo propuesto ni era *"extenso"* (Reglamento de Zonificación, sección 97.02(3), ni *"constituye un uso diferente al aledaño, de gran impacto al área", ni se trata de "un sector de gran valor ecológico o de un área en exceso densa".* (Moción de desestimación y en oposición, pág. 9). La Junta también señala que la resolución impugnada no cambió la zonificación del predio y que no era necesario hacerlo para aprobar la consulta. Según la Junta, nada le impide autorizar el desarrollo de cualquier proyecto en terrenos clasificados P, aunque reconoce que en este caso será necesario rezonificar el predio en un proceso posterior, después de la construcción. Concluye que como no hubo rezonificación, no era mandatoria la notificación a los vecinos ni la celebración de vista.

Por último, la Junta argumenta que al aprobarse la consulta no se autorizó variación alguna y que no era necesario hacerlo. También expone que al conceder lo solicitado, estudió y sopesó todos los elementos pertinentes, tales como infraestructura, ruidos, inundabilidad, ventilación, iluminación y tránsito.

Habipro, por su parte, alega que los vecinos de Colinas de Cupey participaron en el procedimiento ante ARPE y que su presente acción constituye un ataque colateral a la decisión de esa agencia, porque el proceso ante la Junta es *"la secuela de lo actuado previamente por ARPE".* (Moción informativa y asumiendo representación legal de 17 de enero de 1997, pág. 2). Le parece pertinente a la revisión solicitada el que la Asociación no acudiera en revisión de la decisión de ARPE. También entiende que habiéndose celebrado ya una vista ante ARPE no haría sentido otra vista ante la Junta. Expone que como el trámite ante la Junta fue uno de consulta de ubicación y no de rezonificación, no era necesario que esa agencia celebrase una vista.

A su entender, la consulta de ubicación original no caducó pues no sólo se presentó el proyecto preliminar ante ARPE dentro del año de vigencia, sino que se construyeron las viviendas autorizadas. De esta forma, Habipro insiste que el mecanismo apropiado para lograr la autorización solicitada ahora era la enmienda a la consulta, *"pues el predio en cuestión forma parte de la consulta de ubicación 71-036-URB y el uso de los terrenos originalmente reservado [sic] para la facilidad vecinal de escuela fue liberado y propuesto para los fines residenciales permitidos en los Distritos 'P' y 'R-3' ".* (Moción en cumplimiento de orden, pág. 10).

Al igual que la Junta, Habipro aduce que para la consideración de la enmienda a la consulta de ubicación no era necesario celebrar vista pública. Primeramente, porque esa determinación es discrecional de la Junta, salvo en casos de *"desarrollos extensos"* y en segundo lugar, porque la Junta no abusó de su discreción al no ordenar la celebración de vistas ya que los residentes tuvieron oportunidad plena de participación en los procedimientos ante ARPE: *"...la participación de la Junta ahora, no es sino un procedimiento que es la continuación de lo actuado ante la ARPE. Entendemos que desde todo punto de vista práctico, celebrar dos vistas públicas para la evaluación de un mismo proyecto, es completamente innecesario".* (Moción en cumplimiento de orden, página 13 ).

Según Habipro, los vecinos no tienen derecho alguno a usar el predio como parque, pues éste se había destinado originalmente para escuela. Como no tenían tal derecho, no era necesario notificarles de la solicitud de desarrollo.

Afirma Habipro que *"[e]l mero hecho de que sus propiedades colinden con los terrenos de Habipro Development Corporation no lo [sic] convierte en parte afectada".* (Moción en cumplimiento de orden, pág. 3 ).

Habipro argumenta que una vez liberado el predio por ARPE, el desarrollo propuesto no requería una variación en uso y tampoco se requería notificación a los vecinos para autorizarlo. Alega que al amparo del inciso 13 de la Sección 32.02 del Reglamento de Zonificación (Reglamento 4 de Planificación) el uso privado residencial que el proyecto contempla es permisible, aun cuando el predio continúe zonificado como P. Según Habipro, el predio ostenta, simultáneamente, la clasificación P y la clasificación R-3 del área colindante y el uso residencial propuesto es uno de los

permitidos en dicho Distrito R-3 por lo cual no se requería una variación. Contrario a la Junta, Habipro entiende que la rezonificación es innecesaria, pues tanto la zonificación P como la R-3 imperante en el predio, permiten el uso residencial propuesto. (Moción en cumplimiento de orden, pág. 11.

## II

Expuesto lo anterior, debemos resolver si los vecinos de Colinas de Cupey tenían, a través de su Asociación, derecho a ser notificados del procedimiento ante la Junta y a participar en el mismo. Debemos resolver si ese derecho incluia la celebración de una vista pública en la cual pudieran exponer y argumentar su posición. Asimismo, debemos resolver si, de tener dicho derecho, éste se ejerció a través de su participación en los procesos anteriores ante ARPE. Para ello, es necesario aclarar el contexto normativo en el cual se desenvuelve el caso. Esto nos requiere, a su vez, examinar los conceptos de *"consulta de ubicación"*, *"variación"* y *"rezonificación"* y su interrelación.

El artículo 16 de la Ley de Planificación, 23 L.P.R.A. 620(1) y (2), faculta a la Junta para adoptar ciertos reglamentos, entre ellos el Reglamento de Zonificación, para guiar el desarrollo integral de Puerto Rico y la mejor utilización de los terrenos en la isla. Este reglamento deberá disponer las condiciones y normas para dispensar de sus requisitos, *"mediante concesiones y autorizaciones directas"* (23 L.P.R.A. 620(1)(h)) cuando sea necesario para *"lograr la utilización óptima de los terrenos no cuando se solicite un uso no permitido, pero compatible con el carácter esencial del distrito [y] la aplicación de los requisitos de los reglamentos resulte en la prohibición o restricción irrazonable del disfrute de una pertenencia o propiedad"*, teniendo siempre presente el *"beneficio o protección del interés público"*. 23 L.P.R.A. 62J(7).

El proyecto cuya ubicación da lugar al proceso de revisión que nos ocupa surge a la vida jurídica mediante la aprobación por la Junta de una consulta de ubicación, figura que se define como *"el procedimiento ante la Junta de Planificación para que ésta evalúe, pase juicio y tome la determinación que estime pertinente sobre propuestos usos de terrenos **que no son permitidos ministerialmente por la reglamentación** aplicable en áreas zonificadas..."*. Reglamento de Adjudicación, Sección 2.01(4); Reglamento de Zonificación, Sección 2.01, página 10 (énfasis suplido); véase también la Sección 3.03(a) del Reglamento de Adjudicación.

La tramitación por la Junta de una consulta de ubicación se regula en la sección 7.00 del Reglamento de Adjudicación. Esta dispone que *"[l]a Junta podrá ordenar la celebración de vistas administrativas a iniciativa propia o a petición de partes, o vistas públicas en cualquier caso en que entienda que merecen seguir ese procedimiento cuando así lo establezca la reglamentación o legislación vigente"*. La resolución de la Junta en torno a una consulta pública o privada, se hará *"considerando la totalidad del expediente, mediante resolución en la cual incluya las determinaciones de hecho y conclusiones de derecho que fundamenten el acuerdo tomado"* (sección 7.01, énfasis suplido).

La Sección 4.01 Reglamento de Adjudicación aclara que: *"cuando una consulta de ubicación conlleve una variación de las disposiciones reglamentarias vigentes"*, se someterá, junto a la consulta, una solicitud de variación en la que deberán señalarse los motivos, fundamentos y razones que apoyan la concesión de la variación solicitada. Según los Reglamentos de Adjudicación y de Zonificación, una variación es *"una autorización para utilizar una propiedad para un uso prohibido por las restricciones impuestas a una zona o distrito y que sólo se concede para evitar perjuicios a una propiedad con respecto a la cual, debido a circunstancias extraordinarias, la aplicación estricta de la reglamentación equivaldría a una confiscación de la propiedad"*. Reglamento de Adjudicación, sección 2.00(25); Reglamento de Zonificación, sección 2.01, página 25. El término *"variación"* es sinónimo del término *"concesión"* utilizado en la ley orgánica de la Junta, 23 L.P.R.A. 620 (1)(h).

La regulación del proceso de variación se encuentra en el Reglamento de Zonificación. Este dispone, en lo pertinente a nuestro caso, que el propósito de las variaciones *"será evitar que la aplicación literal de los requerimientos de este Reglamento resultare en una confiscación del disfrute de la propiedad"*. (Reglamento de Zonificación, sección 98.02). Al conceder variaciones, la Junta deberá especificar *"la naturaleza y extensión de las mismas"* así como las *"condiciones que a su juicio son necesarias para asegurar el cumplimiento de los criterios que se establecen en esta Sección [sic]*

*para autorizar variaciones."* (Reglamento de Zonificación, sección 98.07). La sección 98.05 del Reglamento de Zonificación delimita el ejercicio de discreción de la Junta para autorizar variaciones, al disponer que tan sólo se hará *"cuando se pueda establecer que ninguno de los usos que están permitidos en el distrito es factible en la propiedad desde el punto de vista físico o económico".* Para que la Junta pueda hacer esta determinación, esta sección le requiere considerar númerosos factores, especialmente aquellos que demuestren el beneficio que el desarrollo propuesto representa para el vecindario. Además, el Reglamento no permite la autorización de una variación para impedir un daño auto-infligido. Así, dispone que *"[l]as razones por las cuales ningún uso permisible es factible en la propiedad sin la variación deben ser únicas a la misma y no una característica general del distrito o del sector del distrito donde ubica. No podrán haber sido causados por el dueño".* Reglamento de Zonificación, sección 98.05(2).

Para la autorización de variaciones en uso se requiere la celebración de vista pública. (Reglamento de Zonificación, sección 98.04). En dichas vistas se observarán los requisitos y el proceso aplicable a los cambios de zonificación, dispuestos en las secciones 4.06 y 4.08 del Reglamento. Estos incluyen la notificación al mayor número de vecinos, disponiéndose una fórmula específicamente para ello. Además, la sección 98.04 también requiere a la Junta notificar a las partes toda decisión que se tome en torno a estas solicitudes.

Examinemos ahora las disposiciones normativas referentes a la rezonificación. La Ley Orgánica de la Junta la facultó para adoptar y aprobar, además del Reglamento de Zonificación, los mapas de zonificación y sus enmiendas, como mecanismo para ejercer su facultad de guiar el desarrollo integral de Puerto Rico y supervisar el uso de nuestras tierras. 23 L.P.R.A. 62j(5). El Reglamento de Zonificación define el término *"zonificación"* como sigue:

*"Zonificación - instrumento para clasificar y designar terrenos en zonas y distritos y la aplicación en cada zona y distrito de normas sobre el uso de los terrenos y sobre las obras y estructuras a permitirse"* Reglamento de Zonificación, sección 2.01, énfasis nuestro; véase también la sección 4.01.

Al clasificarse un terreno como *"P"* se le designa para uso de servicio público. (Reglamento de Zonificación, secciones 9.01 y 32.01). La única excepción la constituye lo dispuesto en el número 13 de la Sección 32.02, que autoriza en un distrito P: *"usos privados conforme a lo establecido en la Sección 3.00 de este Reglamento".* Dicha sección 3.00, a su vez, hace patente que la construcción de residencias privadas en un predio clasificado P no está autorizado, a menos que el valor estimado de lo que se propone construir no sobrepase los veinticinco mil ($25,000) dólares. (Reglamento de Zonificación 3.09). Esta es la única excepción permitida por el reglamento a los parámetros de uso establecidos para el distrito P. Ello quiere decir que cualquier otro uso propuesto, como sucede en el caso que nos ocupa, requerirá una variación o una rezonificación.

En cuanto al procedimiento que debe seguirse para la rezonificación, el Reglamento de Zonificación dispone que el proponente debe someter prueba, mediante declaración jurada y acuse de recibo, de que ha notificado de su solicitud a *"los dueños de las propiedades más cercanas del área propuesta a rezonificarse".* El número de vecinos a notificarse se determinará de acuerdo a unos parámetros dispuestos en el Reglamento (Reglamento de Zonificación, sección 4.06(1)). La jurisprudencia ha reiterado la naturaleza mandatoria de estos requisitos y el deber de la Junta de velar por su cumplimiento estricto. *Montoto Pratts v. Pelayo Lorie,* ___ D.P.R. ___ (1998), **98 J.T.S. 25**; *Cotto v. Departamento de Educación,* 138 D.P.R. ___ (1995), **95 J.T.S. 79**. La Ley de Planificación requiere vista pública tanto para adoptar mapas de zonificación como para enmendar los mismos. 23 L.P.R.A. 62z. El Reglamento de Zonificación recoge este requisito en su sección 4.08.

### III
A tenor con las disposiciones normativas reseñadas hasta ahora, la Junta pudo haber considerado y adjudicado la solicitud sometida por Habipro como lo que originalmente fue, una solicitud de variación, aplicando para ello los parámetros de sus reglamentos y de la jurisprudencia. Estos requieren que se demuestre:

*"1. Que el uso autorizado podría constituir una confiscación de la propiedad.*

*2. Que las razones por las cuales ningún uso permisible es factible son aplicables tan sólo al predio para el cual se solicita la variación y no una característica general del sector.*

*3. Que estas razones no fueron causadas por el dueño y, más ampliamente, que no se trata de un daño auto infligido, por haber adquirido la propiedad con conocimiento real o constructivo de las restricciones sobre su uso.*

*4. Que el uso propuesto es compatible con el resto de la comunidad.*

*5. Que no se afecta adversamente a la comunidad, en términos de una serie de factores enumerados en el reglamento, relacionados todos a elementos de política pública, al bienestar general y al bienestar de la comunidad aledaña al proyecto propuesto. Véanse, además de las secciones del Reglamento de Zonificación señaladas antes, los casos de ARPE v. JACL, supra, y Quevedo Segarra v. JACL, 102 D.P.R. 87 (1974)."*

Es menester indicar que aunque la jurisprudencia no ha eliminado la posibilidad de utilizar el mecanismo de variación para liberar a un predio de los requisitos de su zonificación, ha hecho claro que estas variaciones *"no se favorecen y deben utilizarse selectivamente en aquellas circunstancias en que un propietario demuestre que las restricciones le causaron un daño particular que no comparte con otros"* y que este daño no fue causado por él, real o constructivamente. *ARPE v. JACL, supra,* página 862; *Asoc. C.D. Octubre v. JACL,* 116 D.P.R. 326 (1985).

Si la Junta prefería no considerar la solicitud de Habipro como una de variación, pudo recurrir al procedimiento de rezonificación. Recordemos que entre las razones por las que la propia Junta rechazó la consulta de ubicación presentada por Habipro en 1989 estaba el que tratándose de un terreno zonificado P, el proponente tenía que seguir el procedimiento de rezonificación. En efecto, ARPE condicionó su autorización *"a que el uso futuro a darse a los referidos terrenos" fuera autorizado por la Junta "mediante una consulta de ubicación o un cambio de zonificación".* Por otra parte, a tenor con la jurisprudencia citada, el proceso de rezonificación es el más adecuado, aunque en ciertas circunstancias puede no ser el único, para eximir un predio de los requisitos de su zonificación.

Ambos procedimientos, el de variación y el de rezonificación, requieren la celebración de vistas públicas. En ambos casos, los requisitos de notificación son los dispuestos en la sección 4.06 del Reglamento de Zonificación. La Junta intenta evadir esta realidad recurriendo a su discreción para negar la celebración de vista en los procedimientos de consulta de ubicación. Esta discreción no estaba disponible en este caso, pues aunque se tratara efectivamente de una consulta de ubicación, la misma conllevaba una variación. Recordemos que la determinación sobre la celebración de vistas en torno a una consulta es discrecional de la Junta, salvo que la reglamentación o legislación así lo requiera, cual es el caso cuando se solicita y considera una variación (Reglamento de Adjudicación, sección 7.01).

Por otra parte, aun si no fuera necesario dispensar del reglamento mediante variación ni rezonificar el predio, la Junta vendría obligada a celebrar vista pública para considerar la consulta de ubicación. La jurisprudencia no deja duda de que el proceso de consulta de ubicación es de naturaleza adjudicativa, aunque la consulta no vaya acompañada de una solicitud de variación. Así se desprende del caso medular de *López v. Junta de Planificación,* 80 D.P.R. 646 (1958), cuyas doctrinas se han aplicado reiteradamente, no obstante la adopción en 1975 de una nueva ley orgánica de la Junta de Planificación. ■ De esta opinión derivamos que es necesario celebrar una vista de tipo adjudicativo siempre que el ejercicio de una facultad discrecional de la Junta esté sujeta a criterios específicos de ley y de reglamento que deben aplicarse a hechos también específicos. Al resolver en torno a una consulta de ubicación, la junta decide una controversia particular, aplicando a los hechos específicos del caso las normas establecidas en los reglamentos: *"En consecuencia, tiene que celebrar una vista administrativa de carácter cuasi judicial, ajustándose a los requisitos del debido proceso de ley".* La opinión puntualiza, además, que: *"Es imprescindible que la Junta haga conclusiones de hecho fundadas en la prueba que se presente en dicha vista. Además, debe exponer las razones o fundamentos que sirven de base a su decisión" López v. Junta, supra,* pág. 661. Recordemos que esto es precisamente lo que requiere la sección 7.01 del Reglamento de Adjudicación. El Tribunal Supremo reiteró la naturaleza adjudicativa de la consulta de ubicación más recientemente en *Luan*

*Investment Corp. v. Román,* **90 J.T.S. 25,** página 7493, nota 2.

Según *López v. Junta,* cuando sea neceario llegar a conclusiones sobre el cumplimiento de un proyecto con criterios reglamentarios específicos, particularmente sobre el interés público servido y el bienestar del vecindario afectado, la Junta debe dar participación en el proceso a los que representen estos intereses. Específicamente, debe darse participación *"a los dueños de las propiedades más cercanas"* ■ puesto que sus intereses propietarios particulares pueden verse afectados por la determinación de la Junta. La extensión de esta participación nos la provee la Ley de Procedimiento Administrativo Uniforme (LPAU), Ley Núm. 170 de 12 de agosto de 1988, 3 L.P.R.A. 2101 y ss. A tono con ésta, el procedimiento que *López v. Junta llama "vista de carácter cuasi judicial"* y LPAU denomina *"adjudicación formal",* debe incorporar y salvaguardar *"el mínimo irreductible"* del debido procedimiento administrativo, cuya característica medular es *"que el procedimiento que siga el Estado sea justo". Baerga v. Fondo del Seguro del Estado,* 132 D.P.R. ___ (1993), opinión de 25 de enero de 1993, **93 J.T.S. 9** ■ Este *"mínimo irreductible"* comprende varios derechos que fueron codificados en la Ley de Procedimiento Administrativo Uniforme y son: el derecho a notificación, el derecho a presentar evidencia, el derecho a una adjudicación imparcial y el derecho a que la decisión se base en el expediente (3 L.P.R.A. 2151). Obviamente, la notificación a las partes de toda resolución u orden de la agencia que pueda afectar sus intereses también es parte del debido proceso administrativo (3 L.P.R.A. 2166).

Por otra parte, la Ley de Procedimiento Administrativo Uniforme requiere la inclusión de determinaciones de hechos en las resoluciones administrativas. 3 L.P.R.A. 2164. Según vimos, la jurisprudencia también ha reiterado desde mucho antes y en varias ocasiones la naturaleza fundamental de esta obligación. *López v. Junta de Planificación, supra; Vega Cruz v. Comisión Industrial,* 109 D.P.R. 290 (1979); *Rivera Santiago v. Secretario de Hacienda,* 119 D.P.R. 265, 275 (1987). Véase *Brooks v. AEC,* 476 F. 2d 924 (D.C. Cir. 1973): *"[t]he necessity for administrative agencies to provide a statement of reasons--- is a fundamental principle of administrative law".* Este no es un requerimiento puramente formal, sino que bajo ciertas circunstancias, es parte indispensable del debido proceso de ley. *Rivera v. Secretario de Hacienda, supra,* nota 3, página 276.

Es importante señalar que una agencia no cumple con esta obligación a través de expresiones generales o meras inferencias. Por el contrario, desde 1958, cuando se decidió *López v. Junta de Planificación, supra,* las agencias vienen obligadas a exponer en sus resoluciones los hechos básicos en los cuales se fundamentan sus inferencias. Por eso, la Junta debió referirse en sus resoluciones *"tanto a los hechos básicos que estimó probados, luego de resolver cualesquier [sic] conflictos en la prueba, como a las inferencias de hecho que en última instancia creyó justificadas. Por otra parte, la Junta debió exponer las razones o fundamentos de derecho que sirvieron de base a su decisión. De otro modo, es obvio que toda revisión sería imposible". López v. Junta de Planificación, supra,* pág. 667. Las determinaciones de hechos se componen, pues, de los hechos básicos que se estimen probados y de las inferencias o conclusiones que de éstos derive la agencia. Ambos son necesarios, junto a las conclusiones de derecho, para que la agencia cumpla su obligación de exponer las razones que sirven de base para su decisión. ■ En el caso de autos, la Junta venía obligada a exponer los hechos básicos e inferencias sobre los factores que por disposición de reglamento deben comprobarse antes de autorizarse consultas y variaciones. No lo hizo así, limitándose a expresiones generalizadas y conclusorias.

También es menester aclarar que *"el procedimiento que hemos explicado debe seguirse, no sólo para la autorización original de una consulta de ubicación, sino cada vez que se solicite una enmienda que constituya una variación al uso autorizado o a alguna condición significativa de la autorización. Lo mismo es cierto cuando la reapertura de una consulta requiere una variación. Cabe señalar que en cuanto a esto, que toda consulta privada tendrá una vigencia limitada de doce meses y al vencer la misma será necesario "solicitar y obtener* **nuevamente** *la aprobación del proyecto por la Junta".* Reglamento de Adjudicación, sección 10.00, énfasis nuestro; véase *Asoc. de Res. Baldrich, Inc. v. Junta de Planificación,* 118 D.P.R. 759 (1987).

**IV**

Nuestra función revisora, por lo general, está delimitada por la deferencia debida a los conocimientos especializados de las agencias administrativas y por la presunción de corrección y

regularidad que acompaña sus determinaciones. ■ Ello conlleva la aceptación de la interpretación y aplicación que éstas hacen de los estatutos y reglamentos que les compete implantar. No podemos obviar, sin embargo, que la deferencia que debemos a dicha interpretación no es más que una regla de hermenéutica y de ningún modo afecta el alcance de nuestra facultad revisora. *Comisionado de Seguros v. General Accident Insurance Co.*, ___ D.P.R. ___ (1993), **93 J.T.S. 10,** nota 2. Por eso, no podrá sostenerse una interpretación administrativa irrazonable que conduzca a una injusticia. *Calderón Morales v. Administración Sistema de Retiro*, **92 J.T.S. 21.**

También forma parte del marco normativo del proceso de revisión la sabía regla que lo limita a evaluar si las determinaciones de hecho de la agencia están sostenidas por evidencia sustancial, ■ regla que aplicará con mayor intensidad en la medida en que sea necesario adjudicar la credibilidad de testigos y hacer inferencias de hechos. *Junta de Relaciones del Trabajo v. Línea Suprema Inc.,* 89 D.P.R. 840, 849 (1964). ■ Sin embargo, dos cosas son necesarias para que entre en operación esta norma de autolimitación judicial. La primera y la más evidente, es que el proceso de recopilación de la evidencia en la que descansa la determinación administrativa brinde la oportunidad para que todas las partes con derecho a ello sometan la prueba que apoya su posición. De otra forma, no sólo no brinda la agencia el *"mínimo irreductible"* del debido proceso de ley administrativo, sino que falla en evaluar y ponderar la prueba en su totalidad, lo cual vicia su juicio de arbitrariedad y parcialidad. ■ El segundo requisito para que un tribunal revisor se abstenga de cuestionar las determinaciones de hechos de una agencia es que la decisión administrativa contenga dichas determinaciones de hechos, tanto básicas como inferenciales, y que éstas constituyan las premisas fácticas de sus conclusiones de derecho. *Vega Cruz v. Comisión Industrial, supra.* Todo lo anterior estuvo ausente en este caso.

Resolvemos que los propietarios de solares aledaños al solar objeto de la consulta de ubicación en este caso tienen un interés reconocido por los reglamentos y la jurisprudencia en asegurar que las decisiones de la Junta se fundamenten en los factores específicos que son requeridos para concesión de variaciones a las disposiciones reglamentarias así como para la rezonificación. Estos factores excluyen el que se tome una decisión de esta naturaleza basada exclusivamente en el bienestar económico del proponente. Este reconocimiento de su derecho a participar en el proceso administrativo, junto al innegable efecto que una decisión administrativa mal tomada puede tener sobre el valor de sus propiedades y su calidad de vida, son suficientes para constituir un interés propietario protegido por el debido proceso de ley. Constitución del Estado Libre Asociado de Puerto Rico, artículo II, sección 7. Los residentes de la urbanización debieron tener la oportunidad de comparecer personalmente a una vista en la cual se les brindara una oportunidad efectiva de dar a conocer sus objeciones a la solicitud y presentar evidencia y argumentos en refutación de la prueba de los proponentes. Según ha interpretado la jurisprudencia, este derecho surge del propio Reglamento de Adjudicación de la Junta, de la obligación de ésta de decidir de acuerdo a los criterios específicos establecidos en ése y en los demás reglamentos aplicables y de su deber de informar las razones de su decisión. En este sentido, tiene plena aplicación la norma que dispone que cuando están en juego los derechos de una parte, las agencias administrativas deben cumplir con los procedimientos que ellas mismas han establecido, aun cuando éstos sean más rigurosos de lo que se requeriría en ausencia de dicha reglamentación procesal. *Hernández García v. J.R.T.,* 94 D.P.R. 22 (1967); *García v. Administrador del Derecho al Trabajo,* 108 D.P.R. 53 (1978). ■ Los procedimientos ante ARPE en nada suplieron ni sustituyeron lo requerido por la ley y los reglamentos de la Junta de Planificación.

A tenor con lo anterior, se expide el auto y se revoca la resolución recurrida.

Así lo acordó y lo manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 98 DTA 172**

**1.** La Ley Núm. 75, *supra*, y la Ley Núm. 76 de 24 de junio de 1975 --Ley Orgánica de A.R.P.E.-- tuvieron como objetivo crear *"un nuevo esquema administrativo"* y una *"restructuración"* de funciones operacionales entre la Junta y la nueva agencia, A.R.P.E., pero no alteraron la política pública en el campo de la planificación. Véase *Asoc. C.D. Octubre v. J.A.C.L.,* 116 D.P.R. 326 (1985); *Junta de Planificación v. J.A.C.L.,* 109 D.P.R. 210, 214 (1979).

**2.** Reglamento de Zonificación, secciones 7.00, 4.06 y 4.08.

**3.** Véase *Ortiz Cruz v. Junta Hípica,* 101 D.P.R. 791 (1973); *López Vives v. Policía de Puerto Rico,* 118 D.P.R. 219 (1987); *Rivera Santiago v. Secretario de Hacienda,* 119 D.P.R. 265, 274 (1987); *Henríquez v. Consejo de Educación Superior,* 120 D.P.R. 194 (1987).

**4.** Véase al respecto, Schwartz, *Administrative Law.* Third Edition (1991), págs. 47, 458, 460: *"Findings are of two kinds: basic and ultimate....It is not enough for an agency to make only ultimate findings. It must also recite the underlying basic facts and show that the ultimate facts on which the decision rests aford a reasonable basis for the decision. Each ultimate fact must be thoroughly explained in order for the reviewing court to be able to determine the basic facts on which the ultimate finding was based.... if the requirement of findings means anything, it must compel administrative agencies adequately to articulate the bases of their action, showing a rational connection between the facts found and the choice made. The findings rule stems from the need for courts to know what it is that an agency has determined in order that they may know what to review."*

**5.** *Viajes Gallardo v. Clavell,* **92 J.T.S. 90,** pág. 9685; *M & V Orthodontics v. Negociado de Seguridad de Empleo,* 115 D.P.R. 183, 189 (1984; *Henríquez v. Consejo de Educación Superior,* 120 D.P.R. 194 (1987); *Murphy Bernabé v. Tribunal Superior,* 103 D.P.R. 692 (1973).

**6.** Véase *Rodrigo v. Tribunal Superior,* 101 D.P.R. 151, 154-155 (1973); *Hilton Hotels International Inc. v. Junta de Salario Mínimo,* 74 D.P.R. 670, 684-689 (1953; *Viajes Gallardo v. Clavell,* **92 J.T.S. 90,** pág. 9685; *M & V Orthodontics v. Negociado de Seguridad de Empleo,* 115 D.P.R. 183, 189 (1989); *Henríquez v. Consejo de Educación Superior,* 120 D.P.R. 194 (1987); *Murphy Bernabé v. Tribunal Superior,* 103 D.P.R. 692 (1973).

**7.** La jurisprudencia sobre este punto es extensa. Véase, entre otros, *Puerto Rico Telephone Co. v. Unión Independiente de Empleados Telefónicos,* **92 J.T.S. 93;** *Fuentes v. A.R.P.E.,* **92 J.T.S. 105;** *Silva Rodríguez v. Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura,* **91 J.T.S. 39;** *Asociación de Doctores en Medicina al Cuidado de la Salud Visual v. Colegio de Optómetras de Puerto Rico,* **93 J.T.S. 12;** *Chase Manhattan Bank v. Emmanuelli Bauzá,* 111 D.P.R. 708 (1981); *Junta de Relaciones del Trabajo v. Escuela Cooperativa,* 107 D.P.R. 151 (1978); *Sucesión Bernat v. Peñagarícano, Administrador,* 84 D.P.R. 526 (1962).

**8.** *Montaner v. Comisión Industrial,* 54 D.P.R. 781 (1939); *González Santiago v. Fondo del Seguro del Estado,* 118 D.P.R. 11, 17 (1986).

**9.** Véase *McClelland v. Andru*s, 606 F. 2d 1272 (U.S. App. D.C. 371 (1979)); *Barr v. U.S.* 689 F. Supp. 1248, 1250 (E.D.N.Y. 1988).